✎JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

THOMAS MONTI,
LIFTED LIQUIDS, INC., and THE HAPPY CACTUS APOTHECARY LLC

**DEFENDANTS**

IMELDA GARCIA, in her official capacity as Interim Commissioner of the Texas Department of State Health Services, et al.

**(b)**  County of Residence of First Listed Plaintiff     Galveston
         (EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant     Travis
         (IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)

The Banks Law Firm, P.A.
1415 Louisiana, 18th Floor, Houston, TX 77002, (281) 755-3850

Attorneys (If Known)

## II.  BASIS OF JURISDICTION      (Place an "X" in One Box Only)

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question (U.S. Government Not a Party)
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity (Indicate Citizenship of Parties in Item III)

## III.  CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT    (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | **PRISONER PETITIONS** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 510 Motions to Vacate Sentence | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | **Habeas Corpus:** | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 530 General | | ☒ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 535 Death Penalty | | |
| | | ☐ 540 Mandamus & Other | | |
| | | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | | |

**(TORTS continued): PERSONAL INJURY** — ☐ 362 Personal Injury - Med. Malpractice; ☐ 365 Personal Injury - Product Liability; ☐ 368 Asbestos Personal Injury Product Liability. **PERSONAL PROPERTY** — ☐ 370 Other Fraud; ☐ 371 Truth in Lending; ☐ 380 Other Personal Property Damage; ☐ 385 Property Damage Product Liability.

## V.  ORIGIN      (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity)**:
28 U.S.C. §1331

Brief description of cause:
Declaratory and injunctive relief challenging Texas hemp law.

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ Yes   ☒ No

## VIII.  RELATED CASE(S) IF ANY      (See instructions):

JUDGE _____     DOCKET NUMBER _____

DATE   07/30/2026

SIGNATURE OF ATTORNEY OF RECORD   *Andrea Steel*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| THOMAS MONTI; LIFTED LIQUIDS, INC.; and THE HAPPY CACTUS APOTHECARY LLC, | § § § § | |
| Plaintiffs, | § § | Civil Action No. _____ |
| v. | § § § | |
| IMELDA GARCIA, in her official capacity as Interim Commissioner of the Texas Department of State Health Services, KEN PAXTON, in his official capacity as Attorney General of Texas; KENNETH A. CUSICK, in his official capacity as Galveston County Criminal District Attorney; and JIMMY FULLEN, in his official capacity as Sheriff of Galveston County, | § § § § § § § § § § § | |
| Defendants. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT
<u>FOR DECLARATORY AND INJUNCTIVE RELIEF</u>**

## I. PRELIMINARY STATEMENT AND NATURE OF THE ACTION

**1.** This action presents a straightforward question of federal law. In the Agriculture Improvement Act of 2018 (the "2018 Farm Bill"), Congress defined "hemp" and removed hemp – and the tetrahydrocannabinols ("THCs") in hemp – from the federal Controlled Substances Act. In 2019, the Texas Legislature adopted that same federal framework; the meaning of the Texas law therefore follows from the federal enactment it mirrors, and what the federal law places outside the Controlled Substances Act, Texas places outside it too. Defendants nonetheless enforce a state agency's determination to reinstate Schedule I

1

definitions of 'Tetrahydrocannabinols' and 'Marihuana Extract' (the 'Reinstated Definitions') that depart from that federal enactment and return the THCs in hemp to Schedule I, reimposing statewide controlled-substance treatment. Plaintiffs do not ask this Court to resolve any questions of state law, or any policy debate reserved to the legislative branch; they ask only what federal law requires, and whether Defendants' enforcement of the Reinstated Definitions is consistent with federal law and with the Constitution. Plaintiffs seek declaratory and injunctive relief barring enforcement of the Reinstated Definitions as preempted by the 2018 Farm Bill and repugnant to the Due Process and Commerce Clauses.

**2**. We are faced here with legislative enactment that cannot be reconciled with an executive rule. The first is the Texas Legislature's adoption of the federal 2018 Farm Bill, through its enactment of H.B. 1325, the "Texas Farm Bill," signed into law on June 10, 2019: a "controlled substance" "does not include hemp . . . or the tetrahydrocannabinols in hemp." Tex. Health & Safety Code § 481.002(5). The second is an agency rule, republished on July 10, 2026, deeming all THCs in hemp Schedule I controlled substances "except for up to 0.3% delta-9-tetrahydrocannabinols in hemp." 51 Tex. Reg. 4597 (July 10, 2026). Under the statute, hemp and hemp-derived THCs are excluded from the Controlled Substances Act. Under the rule — as the State has maintained through more than four and a half years of litigation — they are Schedule I controlled substances. This creates an irreconcilable conflict as a legal incompatibility between a widely understood law and a new conflicting rule announced a few weeks ago as becoming effective today, causing the

2

entire hemp industry to become immediately at risk of criminal liability and enforcement. Texas law cannot simultaneously exclude these substances from being deemed "controlled substances" while also classifying them as Schedule I controlled substances.

**3.** Congress drew this line clearly, and Texas adopted it through legislation. In 2018, Congress removed hemp – including "all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers" of the plant with a delta-9 THC concentration of not more than 0.3% – from the federal Controlled Substances Act. 7 U.S.C. § 1639o(1). Congress itself rewrote Schedule I: "Tetrahydrocannabinols, except for tetrahydrocannabinols in hemp." 21 U.S.C. § 812(c), Schedule I(c)(17). The following year, the Texas Legislature adopted Congress's definition, using the same language, and launched the Texas hemp program in 2019, which has boomed ever since.

**4.** In 2020, the Drug Enforcement Administration ("DEA") updated the federal Schedule I listing for THCs accordingly: it excludes "any material, compound, mixture, or preparation that falls within the definition of hemp set forth in 7 U.S.C. 1639o." 21 C.F.R. § 1308.11(d)(31)(ii). The DEA adopted those changes without notice and comment because, as it explained, the rule changed nothing, "merely conform[ing] DEA's regulations to the statutory amendments to the CSA that have already taken effect," as enacted by Congress, leaving the agency "no discretion" to exercise. 85 Fed. Reg. 51,639, 51,642 (Aug. 21, 2020) (the "DEA IFR"). The leading federal appellate decisions read the definition according to its text, recognizing that Congress chose the delta-9 THC concentration threshold — not the presence of other hemp-derived cannabinoids, nor the

method by which those cannabinoids are produced — as the statutory dividing line. The Ninth Circuit has held that hemp-derived delta-8 THC products satisfying the statutory delta-9 limit fall within the federal definition of hemp. *AK Futures LLC v. Boyd Street Distro, LLC*, 35 F.4th 682, 690-93 (9th Cir. 2022). The Fourth Circuit has since agreed that § 1639o is unambiguous on this point and that no deference is owed to a contrary agency interpretation. *Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165, 187 (4th Cir. 2024) (agreeing with *AK Futures* that § 1639o is unambiguous and declining to defer to DEA's contrary reading, citing *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2262 (2024)).

**5.** The Department of State Health Services (the "Department" or "DSHS"), however, treated the DEA IFR's non-discretionary, conforming changes as the occasion to accomplish by rule what neither Congress nor the Texas Legislature had done: to return to Schedule I the hemp-derived THCs the Legislature had excluded from that classification. DSHS first inserted the Reinstated Definitions in 2021 without completing ordinary scheduling procedures, and a Texas court promptly enjoined their enforcement – a temporary injunction that held for more than four-and-a-half years. After the Texas Supreme Court dissolved that injunction on sovereign-immunity grounds, expressly declining to reach the merits and calling the challengers' statutory arguments "significant and forceful," the Department republished the Reinstated Definitions on July 10, 2026.

**6.** The republished Reinstated Definitions carry no effective date on their face. The State has fixed one – Friday, July 31, 2026 – and has announced it only through channels

that are not rules: the Department's website, the same medium the State maintained throughout the prior litigation was not a rule and carried no independent legal effect; and, on July 29, 2026, a notice distributed by the Texas Health and Human Services Commission to regulated parties, confirming that the schedule "becomes effective July 31, 2026," meaning many lawful consumable hemp products will be treated as Schedule I controlled substances beginning today. Regardless of whether state law may permit an official to adopt without procedures, the federal Constitution still requires fair notice, especially when a person's freedom is at risk. That is a federal question, and it is presented here.

**7.** And, the line the Reinstated Definitions draw cannot be determined. The commissioner represented that delta-8 "naturally occur[ring]" in hemp "is tolerable under the current legal regime," but because no rule, guidance, or required documentation identifies how a regulated party can establish compliance, the purported safe harbor is incapable of providing fair notice and necessarily invites arbitrary enforcement. The determining line between lawful hemp and Schedule I contraband is one the Reinstated Definitions supply no means to draw – in any application, not merely in Plaintiffs'.

**8.** Three plaintiffs bring this action — the national manufacturer, the small Texas business, and the retired law-enforcement consumer — because the Reinstated Definitions reach all three at once: interstate commerce, a Texas storefront, and a nightstand in Galveston County.

9. Plaintiff Lifted Liquids, Inc., an Illinois corporation registered to do business in Texas, has manufactured, distributed, and sold hemp-derived consumable products nationwide since 2020, with Texas among its two largest markets. Every product it manufactures from its cGMP facility carries a lot-matched, full-panel certificate of analysis confirming potency and compliance, retrievable by batch number from a public database. Since Defendants reinstated the challenged Schedule I definitions, Lifted Liquids has accepted significant losses in returned inventory, lost distributors and retail shelf space, and eliminated more than twenty positions. It presently holds approximately $6.7 million in hemp-based raw materials and finished-product inventory whose sale in Texas is prohibited or threatened by the Reinstated Definitions. But for the Reinstated Definitions and Defendants' threatened enforcement, Lifted Liquids would immediately resume shipping its compliant products to Texas distributors. Lifted Liquids seeks declaratory and injunctive relief enjoining enforcement of the Reinstated Definitions and requiring Defendants to administer the controlled-substance schedules using the pre-2021 text, as the Department itself did following the 2022 injunction.

10. Plaintiff The Happy Cactus Apothecary LLC, the small Texas business, is an Austin retailer and consumable hemp licensee whose flagship house-brand delta-8 products are made to its specification by a white-label manufacturer in Oregon, shipped in bulk to its Austin warehouse, packaged there, and sold in its two shops and online to customers in about twenty-five states; the Reinstated Definitions take the only product that bears its

6

logo. But for the Reinstated Definitions and Defendants' threatened enforcement, Happy Cactus would continue obtaining, packaging, and selling those products.

11. Plaintiff Thomas Monti, the retired law-enforcement consumer, spent twenty-three years with the Illinois State Police, seventeen of them on SWAT. He now manages a retail hemp store in Bacliff, Galveston County and, for his documented post-traumatic stress and chronic pain, takes half of a delta-8 THC gummy each night, purchased at retail and accompanied by certificates of analysis. Those gummies are "hemp" under the statutory definitions and, under the State's litigated view of the Reinstated Definitions, a Schedule I controlled substance whose continued possession is prosecutable. Even after decades of enforcing drug laws, Mr. Monti cannot determine which legal classification governs the very product he lawfully purchases, possesses, and sells. But for the Reinstated Definitions and Defendants' threatened enforcement, he would continue purchasing, possessing, using, and selling the verified products at issue.

12. Plaintiffs bring this action solely under federal law: the Due Process Clause of the Fourteenth Amendment, the Agriculture Improvement Act of 2018 and the Supremacy Clause, and the Commerce Clause. They assert no claim under Texas law; they do not ask this Court to decide whether intoxicating hemp products should be lawful as a matter of policy; and they do not ask this Court to review the judgment of any Texas court. They seek a declaration that the 2021 amendments to schedule items *(31) and *(58), as republished on July 10, 2026, are void for vagueness — facially and as applied — preempted by federal law, and an unconstitutional burden on interstate commerce, together

7

with prospective injunctive relief against the officials charged with their civil and criminal enforcement.

**13.** The relief sought is as modest as it is urgent, and it requires no judicial rewriting of Texas law. Invalidation requires this Court to redraft nothing: when these same definitions were enjoined in 2021, the Department reverted to the prior text — the text that is not in conflict with federal law — and published its compliance in the Texas Register. 47 Tex. Reg. 175 (Jan. 21, 2022). The Court is asked only to restore, as a matter of federal law, the alignment the Texas Legislature itself enacted.

**14**. This case concerns the THCs in hemp *other than* delta-9 THC, in hemp and hemp products whose delta-9 THC concentration does not exceed 0.3% on a dry-weight basis– the class the Legislature excluded from the term "controlled substance." The Plaintiffs' own such products are the "Products at Issue." Plaintiffs challenge the 2021 amendments facially as to the class and as applied to the Products at Issue; every Product at Issue complies with the enacted 0.3% delta-9 THC limit, and no claim seeks relief for any product exceeding it. As to delta-8, THCV and other non-delta-9 THCs, Plaintiffs assert both criminal exposure and economic injury; as to THCA — whose coverage by the Reinstated Definitions cannot be determined from their text — we include as evidence of confusion only, not as the foundation of any economic claims.

## II. QUESTIONS PRESENTED

1. *Whether Schedule I definitions that classify as controlled substances the same THCs Texas statutes exclude from the term "controlled substance", and that condition criminal liability on distinctions their text supplies no means to draw, deny fair notice and invite arbitrary enforcement, in violation of the Due Process Clause of the Fourteenth Amendment.*

2. *Whether the 2018 Farm Bill – enacted by Congress, not the DEA – having removed the THCs in hemp from Federal Schedule I, including its command that no State "shall prohibit the transportation or shipment of hemp or hemp products . . . through the State," preempts reinstated Texas definitions that return hemp-derived THCs to Schedule I without any exception for products moving in interstate commerce.*

3. *Whether definitions that sever a lawful national market – compelling an out-of-state manufacturer to abandon one of its two largest states, halt shipments, and retrieve its own compliant products from Texas as contraband – impose a burden on interstate commerce clearly excessive in relation to putative local benefits that Texas's own elected branches have repeatedly declined to claim.*

### III. JURISDICTION

15. This action arises under the Constitution and laws of the United States. Plaintiffs seek declaratory and injunctive relief to redress the Schedule I Reinstated Definitions and their enforcement, which Plaintiffs allege conflict with the 2018 Farm Bill and violate the Commerce Clause, U.S. Const. art. I, § 8; and the Supremacy Clause, U.S. Const. art. VI,

cl. 2. Plaintiffs further allege that the Reinstated Definitions violate the Due Process Clause of the Fourteenth Amendment. Plaintiffs' Due Process and Commerce Clause claims (Counts II and IV) are brought pursuant to 42 U.S.C. § 1983, and, because they seek only prospective relief against state officials sued in their official capacities, they equally proceed under *Ex parte Young*. See *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). Plaintiffs' Supremacy Clause and 2018 Farm Bill preemption claim (Count III) is brought in equity against Defendants in their official capacities under *Ex parte Young*, 209 U.S. 123 (1908), and asserts no private right of action under the 2018 Farm Bill or under the Supremacy Clause itself. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–28 (2015). Plaintiffs' declaratory-judgment claim (Count I) arises under 28 U.S.C. §§ 2201–2202. The State's sovereign immunity under Texas law, on which the Supreme Court of Texas resolved *Sky Marketing*, does not control the distinct federal question whether the Eleventh Amendment bars these federal claims; the *Ex parte Young* exception is a matter of federal law that a state court's immunity ruling does not foreclose.

16. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this action presents federal questions and seeks redress for the deprivation, under color of state law, of rights secured by the Constitution and laws of the United States.

17. Plaintiffs seek declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

18. Plaintiffs seek preliminary and permanent injunctive relief pursuant to Fed. R. Civ. P. 65.

**19.** The Court's jurisdiction is not displaced by the prior state-court litigation. Plaintiffs assert no claim under Texas law, seek no relief for any violation of Texas law, and do not ask this Court to review, modify, or invalidate any Texas-court judgment. No Plaintiff was a party to *Sky Marketing*, and no Plaintiff is subject to any pending state enforcement proceeding. *Texas Dep't of State Health Servs. v. Sky Marketing Corp.*, No. 23-0887, 733 S.W.3d 689 (Tex. May 1, 2026) The questions presented are federal — whether the Reinstated Definitions comport with the 2018 Farm Bill, the Supremacy Clause, and the Constitution — and, because Texas adopted the federal framework without deviating from it, their resolution turns on no unsettled question of state law.

### IV. VENUE

**20**. Venue is appropriate in the Galveston Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred within this Division. Plaintiff Thomas Monti resides in League City, purchases and uses hemp-derived delta-8 THC products in Texas, and works as the manager of Burners Vape/Smoke/Herb in Bacliff, all within Galveston County. The threatened criminal enforcement and resulting injuries to Mr. Monti therefore occur within this Division, and this action challenges enforcement of the Reinstated Definitions against him here.

**21**. Venue is also proper in the Division because Defendants Cusick and Fullen perform their official duties and exercise the criminal prosecution and arrest authority challenged in this action within Galveston County.

11

# V. PARTIES

## A. Corporate Plaintiffs

22. Plaintiff Lifted Liquids, Inc. is an Illinois corporation with its principal place of business in Kenosha, Wisconsin, and is registered to transact business in Texas. Lifted Liquids lawfully manufactures and distributes hemp-derived delta-8 THC products throughout the United States and U.S. territories, including within Texas, from a cGMP-certified facility in Kenosha. Texas is among its two largest markets. Since reinstatement of the challenged definitions, Lifted Liquids has accepted significant losses in returned inventory, lost distributors and retail shelf space, eliminated more than twenty positions, and faces the loss of the Texas market for approximately $6.7 million in hemp-based raw materials and finished products. But for the Reinstated Definitions and Defendants' threatened enforcement, Lifted Liquids would immediately resume shipping its compliant products to Texas distributors.

23. Plaintiff The Happy Cactus Apothecary LLC is a Texas limited liability company headquartered in Austin, Texas, operating two consumable-hemp retail locations in South and East Austin, holding two retail hemp registrations and a consumable hemp product manufacturing license. Approximately ninety-eight percent of its business is hemp. Its house-branded delta-8 products are manufactured to its specifications by a white-label manufacturer in Oregon, shipped in bulk to Austin, packaged there, and sold in its stores and online to customers in about twenty-five states. Defendants' enforcement of the

Reinstated Definitions directly and adversely affects Happy Cactus's lawful business, licenses, employees, and brand. But for the Reinstated Definitions and Defendants' threatened enforcement, Happy Cactus would continue obtaining, packaging, and selling those products.

## B. Individual Plaintiff

24. Plaintiff Thomas Monti is an adult resident of League City, Texas, in Galveston County. Mr. Monti lawfully purchases, possesses, and uses hemp-derived delta-8 THC products and intends to continue doing so. He is also employed full-time as the manager of Burners Vape/Smoke/Herb in Bacliff, Texas, where he handles day-to-day operations involving the possession, sale, distribution, and delivery of consumable hemp products. Defendants' enforcement of the Reinstated Definitions directly and adversely affects Mr. Monti by subjecting him to imminent criminal exposure. But for the Reinstated Definitions and Defendants' threatened enforcement, he would continue purchasing, possessing, using, and selling the verified products at issue.

## C. Defendants

25. Defendant Imelda Garcia is the Interim Commissioner of the Texas Department of State Health Services. She is sued solely in her official capacity. She is responsible for maintaining the Schedules of Controlled Substances and for implementing, administering, and enforcing the Reinstated Definitions, including through the licensing, registration,

13

embargo, and penalty authorities of Chapters 431 and 443 of the Health and Safety Code and 25 Tex. Admin. Code Chapter 300.

26. Defendant Ken Paxton, in his official capacity as Attorney General of the State of Texas. He is sued solely in his official capacity. He is responsible for enforcing Texas law, including the provisions of the Texas Health and Safety Code and for bringing or overseeing civil enforcement actions authorized by those provisions. He possesses civil penalty authority under § 431.058 as applied to consumable hemp products through § 443.002.

27. Kenneth A. Cusick is the duly appointed Criminal District Attorney for Galveston County. He is sued solely in his official capacity. He possesses the authority to prosecute offenses arising from the Reinstated Definitions, including offenses under Tex. Health & Safety Code §§ 481.113, 481.116 and 481.119, within Galveston County.

28. Jimmy Fullen is the duly appointed Sheriff of Galveston County. He is sued solely in his official capacity. He possesses the authority to arrest for offenses arising from the Reinstated Definitions, including offenses under Tex. Health & Safety Code §§ 481.113, 481.116 and 481.119, within Galveston County, where Mr. Monti resides, is employed, and possesses, uses, and sells the Products at Issue.

## VI. FACTUAL ALLEGATIONS

**29**. In the Agriculture Improvement Act of 2018, commonly known as the 2018 Farm Bill, Congress defined "hemp" by reference to its delta-9 tetrahydrocannabinol concentration and removed hemp meeting that definition from Federal Schedule I.

**30.** On June 10, 2019, the Texas Legislature subsequently adopted this federal framework and enacted House Bill 1325, adopting the federal distinction between lawful hemp and marijuana, amending Tex. Health & Safety Code § 481.002(5) to exclude hemp and the tetrahydrocannabinols in hemp from the definition of 'controlled substance, and it established a state regulatory framework consistent with the federal definition of hemp.

**31**. In reliance on the federal and Texas statutory framework, Plaintiffs structured their businesses and conduct by manufacturing, distributing, selling, purchasing, possessing, or using products that qualified as lawful hemp under federal and Texas law.

**32**. More than a year later, under the purported authority of Texas Health & Safety Code § 481.034(g), the Department first inserted the Reinstated Definitions as part of its 2021 annual republication of controlled substances; a Texas court enjoined their enforcement, and the injunction remained in place for more than four and a half years. On May 1, 2026, the Texas Supreme Court dissolved that injunction on sovereign-immunity and jurisdictional grounds, expressly declining to reach the merits. *Tex. Dep't of State Health Servs. v. Sky Marketing Corp.*, No. 23-0887, 733 S.W.3d 689 (Tex. May 1, 2026).

15

The Department republished the challenged definitions on July 10, 2026, 51 Tex. Reg. 4597, and has announced an effective date of today, July 31, 2026.

33. These Reinstated Definitions materially depart from the federal and state definition of hemp, and now subject to Schedule I control and its associated penalties hemp and THCs in hemp that had been previously decontrolled and excluded from being deemed a controlled substance. Congress and Texas removed hemp and THCs in hemp from Schedule I status, but the Department's rule put them back, providing no guidance but subjecting violators to felony criminal liability.

34. The challenged definitions are presently operative and apply to Plaintiffs' conduct, products, and property.

35. Defendants have not disclaimed enforcement of the challenged definitions against Plaintiffs or others similarly situated.

36. Plaintiffs therefore face a credible and imminent threat of investigation, seizure, prosecution, civil or administrative enforcement, loss of licenses or business relationships, and other injury arising from conduct that is lawful under the federal and Texas statutory framework.

37. Unless Defendants are restrained from enforcing the challenged definitions, Plaintiffs will be required to cease or materially alter their lawful conduct or risk enforcement under the Department's challenged definitions.

## VII. STANDING

**38**. Each Plaintiff has standing under Article III to seek the declaratory and injunctive relief requested. A plaintiff challenging a law prior to enforcement need only show (1) an intention to engage in conduct arguably affected with a constitutional interest, (2) that the conduct is arguably proscribed by the challenged provision, and (3) a credible threat of enforcement. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).

**39**. Plaintiff Lifted Liquids intends to continue manufacturing, distributing, and selling its hemp-derived delta-8 THC products into Texas — conduct the Reinstated Definitions classify as trafficking in a Schedule I controlled substance. Defendants have not disclaimed enforcement against Lifted Liquids or its products. But for the Reinstated Definitions and the resulting enforcement threat, Lifted Liquids would immediately resume shipments to its Texas distributors.

**40**. Plaintiff Happy Cactus intends to continue obtaining, packaging, and selling its house-branded delta-8 products from its Austin retail locations — conduct the Reinstated Definitions likewise classify as unlawful. Happy Cactus holds retail hemp registrations and a manufacturing license subject to suspension or revocation for that conduct. But for the Reinstated Definitions and the resulting enforcement threat, it would continue those operations.

**41**. Plaintiff Monti intends to continue purchasing, possessing, and using delta-8 THC products for personal use, and to continue managing a Galveston County retail store

selling those products — conduct that exposes him individually to prosecution under Tex. Health & Safety Code §§ 481.113, 481.116, and 481.119. But for the Reinstated Definitions and the resulting enforcement threat, he would continue that conduct.

42. Each Plaintiff's injury is fairly traceable to Defendants' adoption and enforcement of the Reinstated Definitions and would be redressed by the declaratory and injunctive relief requested.

43. An actual controversy exists between the parties concerning the legality of the Reinstated Definitions and their enforcement, ripe for resolution because Defendants have taken no step to disclaim enforcement.

## VIII. CLAIMS FOR RELIEF
## COUNT I
## DECLARATORY JUDGMENT
## (28 U.S.C. §§ 2201–2202) (All Plaintiffs)

44. Plaintiffs incorporate by reference the preceding allegations.

45. The Declaratory Judgment Act authorizes a federal court, in a case of actual controversy within its jurisdiction, to declare the rights and legal relations of interested parties and to grant further necessary or proper relief. 28 U.S.C. §§ 2201–2202.

46. An actual and immediate controversy exists concerning whether the Products at Issue—products containing hemp-derived THCs other than delta-9 THC, with a delta-9 THC concentration not exceeding 0.3% on a dry-weight basis—are lawful hemp or Schedule I controlled substances.

**47**. Congress defined hemp to include the plant Cannabis sativa L. and its derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers having a delta-9 THC concentration not exceeding 0.3 percent on a dry-weight basis. 7 U.S.C. § 1639o(1).

**48**. Congress excluded hemp from the federal definition of marihuana and excluded THCs in hemp from Federal Schedule I. 21 U.S.C. §§ 802(16)(B), 812(c).

**49**. The Reinstated Definitions classify the Products at Issue as Schedule I controlled substances despite their qualification as hemp under the federal and state statutory definition.

**50**. Defendants maintain that the Reinstated Definitions apply to the Products at Issue and have not disclaimed their enforcement against Plaintiffs.

**51**. Plaintiffs contend that the Products at Issue are lawful hemp under federal law and that Defendants may not classify or enforce against them as Schedule I controlled substances.

**52**. The parties' adverse legal positions present a concrete controversy of sufficient immediacy and reality to warrant declaratory relief.

**53**. Plaintiffs are entitled to a declaration of their rights and legal relations under federal law and to further necessary or proper relief under 28 U.S.C. § 2202.

## COUNT II
## VOID FOR VAGUENESS — FOURTEENTH AMENDMENT DUE PROCESS
### (42 U.S.C. § 1983) (All Plaintiffs)

**54**. Plaintiffs incorporate by reference the preceding allegations.

19

55. Section 1983 provides a cause of action against a person who, acting under color of state law, deprives another of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983.

56. At all relevant times, Defendants acted and threatened to act under color of Texas law in adopting, maintaining, administering, and enforcing the Reinstated Definitions.

57. The Due Process Clause prohibits enforcement of a penal enactment that fails to provide persons of ordinary intelligence fair notice of the conduct it prohibits or that permits arbitrary or discriminatory enforcement.

58. The Reinstated Definitions are penal because they provide the definitional basis for criminal offenses involving the manufacture, delivery, or possession of controlled substances under Texas Health and Safety Code §§ 481.113, 481.116, and 481.119.

59. The Reinstated Definitions also expose regulated persons to license revocation, detention or embargo of products, civil penalties, loss of business rights, and referral to law enforcement.

60. The Reinstated Definitions fail to provide fair notice because Texas law simultaneously: (a) excludes hemp and THCs in hemp from the definition of a controlled substance; (b) reinstates language classifying THCs in hemp as Schedule I substances; and (c) treats THCs other than marihuana as Penalty Group 2 substances while separately excluding hemp from the definition of marihuana.

61. The Reinstated Definitions further prohibit substances having "similar chemical structure and pharmacological activity" without identifying the degree of similarity

20

required, the substances covered, the concentration at which the standard applies, or an objective method for determining compliance.

62. The Reinstated Definitions distinguish between THCs "naturally contained" in the cannabis plant and other THCs without prescribing a test or method capable of determining the origin of a cannabinoid contained in a finished product or an acceptable amount.

63. The one exception the Commissioner has acknowledged — that delta-8 THC 'naturally occurring' in the plant is tolerable — is illusory: natural concentrations are undetectable, and no manufacturer can formulate to, or verify compliance with, an undetectable threshold by certificate of analysis, and such undetectable quantities provide no functional benefit.

64. Certificates of analysis identify the cannabinoids and concentrations present in a product but do not determine whether a cannabinoid was naturally occurring or produced through conversion.

65. As a result, manufacturers, retailers, consumers, laboratories, law-enforcement officers, and prosecutors cannot determine from the text of the Reinstated Definitions which federally compliant hemp products are lawful and which are Schedule I contraband.

66. The absence of objective standards permits enforcement officials to determine on an ad hoc basis what constitutes a substance of "similar chemical structure and pharmacological activity" and whether a cannabinoid was naturally contained in the plant.

67. The Reinstated Definitions therefore fail to provide fair notice and authorize or encourage arbitrary and discriminatory enforcement.

**68**. By enforcing or threatening to enforce the Reinstated Definitions under color of state law, Defendants deprive Plaintiffs of liberty and property without due process of law in violation of the Fourteenth Amendment.

**69**. Plaintiffs have suffered and will continue to suffer economic loss, loss of business opportunities, interference with lawful commerce, loss of property, compliance costs, fear of criminal enforcement and loss of liberty, and other injuries as a direct result of the Reinstated Definitions and the threat of their enforcement.

**70**. Plaintiffs are entitled to declaratory and preliminary and permanent injunctive relief, together with reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

## COUNT III
## FEDERAL PREEMPTION — SUPREMACY CLAUSE AND THE AGRICULTURE IMPROVEMENT ACT OF 2018
### (Ex parte Young) (All Plaintiffs)

**71**. Plaintiffs incorporate by reference the preceding allegations.

**72**. Plaintiffs do not assert a private cause of action under the Supremacy Clause or the Agriculture Improvement Act of 2018.

**73**. Plaintiffs proceed in equity against Defendants in their official capacities to prevent the prospective enforcement of state law that conflicts with federal law. *Ex parte Young*, 209 U.S. 123 (1908).

**74**. Federal law is supreme, and a state enactment is preempted when it conflicts with federal law, makes compliance with both federal and state law impossible, or stands as an obstacle to the accomplishment and execution of Congress's purposes and objectives.

**75**. Congress defined hemp to include all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers of Cannabis sativa L. having a delta-9 THC concentration not exceeding 0.3 percent on a dry-weight basis. 7 U.S.C. § 1639o(1).

**76**. Congress removed hemp from the federal definition of marihuana and excluded THCs in hemp from Federal Schedule I. 21 U.S.C. §§ 802(16)(B), 812(c).

**77**. Congress further provided that no State may prohibit the transportation or shipment through the State of hemp or hemp products produced in accordance with federal law. Agriculture Improvement Act of 2018, § 10114(b).

**78**. The Reinstated Definitions classify the THCs in federally lawful hemp as Schedule I controlled substances without an exception for federally protected transportation or shipment through Texas.

**79**. Courts applying § 10114(b) have held that a state rule criminalizing the possession or delivery of federally lawful hemp products, without an exception for interstate transportation or shipment, is preempted. *Bio Gen LLC v. Sanders*, 142 F.4th 591 (8th Cir. 2025); *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541 (7th Cir. 2020).

**80**. The Reinstated Definitions therefore prohibit or burden conduct and products that federal law expressly protects.

**81**. The Reinstated Definitions also frustrate Congress's decision to remove hemp and the THCs in hemp from federal controlled-substance regulation and to permit a lawful national hemp market.

82. The federal provision permitting States to regulate hemp production more stringently does not authorize an administrative agency to classify finished hemp products as controlled substances contrary to the governing statutory definitions.

83. The Reinstated Definitions regulate finished products, including products manufactured outside Texas under federally approved state plans and transported or sold through interstate commerce.

84. The Reinstated Definitions are therefore preempted to the extent they classify or permit enforcement against the class and the Products at Issue as Schedule I controlled substances.

85. Plaintiffs have suffered and will continue to suffer lost sales, returned products, lost distribution and retail opportunities, employment losses, compliance costs, disruption of interstate commerce, and other economic injuries resulting from the conflict between the Reinstated Definitions and federal law.

86. Plaintiffs are entitled to declaratory relief and preliminary and permanent injunctive relief prohibiting Defendants from enforcing the preempted provisions against Plaintiffs and the Products at Issue.

## COUNT IV
## UNCONSTITUTIONAL BURDEN ON INTERSTATE COMMERCE
## COMMERCE CLAUSE
## (42 U.S.C. § 1983) (All Plaintiffs)

87. Plaintiffs incorporate by reference the preceding allegations.

**88**. Section 1983 provides a cause of action against state officials who, acting under color of state law, deprive a person of rights secured by the Constitution or laws of the United States. 42 U.S.C. § 1983.

**89**. The Commerce Clause restrains state action that discriminates against interstate commerce or imposes burdens on interstate commerce that are clearly excessive in relation to the putative local benefits. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

**90**. The right to engage in interstate commerce free from unconstitutional state burdens is enforceable under 42 U.S.C. § 1983. *Dennis v. Higgins*, 498 U.S. 439, 447–51 (1991).

**91**. At all relevant times, Defendants acted and threatened to act under color of Texas law in maintaining and enforcing the Reinstated Definitions.

**92**. Lifted Liquids manufactures federally compliant hemp products outside Texas and distributes those products through interstate commerce to Texas and other States. The Reinstated Definitions require Lifted Liquids to halt or restrict shipments into Texas, recover or abandon products already distributed in Texas, lose distributors and retail shelf space, and alter a national distribution system to comply with a Texas-specific controlled-substance classification.

**93**. Happy Cactus obtains products and materials through interstate commerce and manufactures, distributes, and sells federally compliant hemp products in Texas as well as ships them to customers across the country outside of Texas. The Reinstated Definitions require Happy Cactus to remove products from inventory, cancel or forego interstate purchases, reduce operations and staffing, forbear its logo-branded signature product, and

25

risk detention, license action, civil penalties, or criminal referral for participating in interstate commerce involving federally lawful hemp products.

94. Mr. Monti participates in interstate commerce by purchasing federally compliant hemp products that move through interstate commerce into Texas, and by managing a Galveston County retail store that stocks and sells those products to consumers. The Reinstated Definitions require Mr. Monti and the store he manages to remove such products from inventory, cancel or forgo interstate purchases, and cease selling federally lawful hemp products that reached Texas through interstate commerce — and expose him to detention, arrest, and criminal prosecution for possessing and delivering those products, as well as personally possessing and using them wherever he may travel, solely because Texas classifies as a controlled substance what federal law and the channels of interstate commerce treat as lawful hemp.

95. The Reinstated Definitions contain no exception protecting the continuous interstate transportation or shipment of federally lawful hemp products through Texas.

97. The Reinstated Definitions consequently disrupt and burden the national market for federally lawful hemp and hemp products.

98. The burdens imposed on interstate commerce are substantial and include interrupted shipments, returned inventory, lost distributors, lost retail access, reduced employment, suspended investment, increased compliance costs, and fragmentation of a national market, as well as subjecting such activity to criminal liability and its actors to deprivation of liberty.

26

**99**. Those burdens are clearly excessive in relation to any legitimate local benefit of classifying federally lawful hemp products as Schedule I controlled substances, particularly where the Texas Legislature adopted the federal definition of hemp and excluded the tetrahydrocannabinols in hemp from the definition of a controlled substance.

**100**. By maintaining and threatening to enforce the Reinstated Definitions under color of state law, Defendants deprive Plaintiffs of rights secured by the Commerce Clause.

**101**. Plaintiffs have suffered and will continue to suffer economic loss and other injury in an amount to be established through proof.

**102**. Plaintiffs are entitled to declaratory and preliminary and permanent injunctive relief, together with reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

a.  Declare that, under the 2018 Farm Bill, 7 U.S.C. § 1639o(1), the sole criterion for whether cannabis material is hemp is its delta-9 THC concentration, and that the presence of other, non-delta-9 THCs does not bear on that determination;

b.  Declare that the Reinstated Definitions are void for vagueness under the Due Process Clause of the Fourteenth Amendment, both facially as to the class and as applied to the Products at Issue;

c.  Declare that the Reinstated Definitions are preempted by the 2018 Farm Bill under the Supremacy Clause—both by § 10114(b) and by conflict with the Act's purposes and objectives;

27

d. Declare that the Reinstated Definitions impose an unconstitutional burden on interstate commerce in violation of the Commerce Clause;

e. Preliminarily and permanently enjoin Defendants, in their official capacities, together with their officers, agents, servants, employees, attorneys, and other persons in active concert or participation with them, from initiating, pursuing, or threatening civil, administrative, or criminal enforcement; embargoing, detaining, seizing, or referring for prosecution; or imposing penalties or adverse licensing action, to the extent such action is premised on Schedule I items *(31) and *(58), as republished at 51 Tex. Reg. 4597 (July 10, 2026), with respect to the Products at Issue against the Plaintiffs and any other person or entity in Texas; in each case only where the product contains no more than 0.3% delta-9 THC on a dry-weight basis; and, upon a determination that the Reinstated Definitions are facially invalid, from enforcing them as to the class—the THCs in hemp other than delta-9 in products with a delta-9 THC concentration at or below 0.3% on a dry-weight basis;

f. To the extent necessary to afford complete relief, order such further relief as is necessary to restore the Schedule I definitions of "Tetrahydrocannabinols" and "Marihuana Extract" to their pre-2021 text, as the Department itself implemented in 47 Tex. Reg. 175 (Jan. 21, 2022);

g. Award Plaintiffs their reasonable attorneys' fees and costs under 42 U.S.C. § 1988 on their claims brought pursuant to 42 U.S.C. § 1983;

h. Award Plaintiffs their costs of suit; and

i. Award such other and further relief as the Court deems just and proper.

28

Dated:  July 31, 2026

Respectfully submitted,

/s/ Andrea Hope Steel
Andrea Hope Steel (TX Bar No. 24064320)
Imani Hutty (NC Bar No. 64346)*
The Banks Law Firm, P.A.
1415 Louisiana, 18th Floor
Houston, Texas 77002
(281) 755-3850
(919) 281-9151
asteel@bankslawfirm.com
ihutty@bankslawfirm.com
*Pro hac vice application forthcoming

- and -

James D. Thorburn (CO Bar No. 21017)
Thorburn Law Group, LLC
6312 Fiddlers Green Circle, Suite 300E
Greenwood Village, Colorado 80111
(303) 646-3482
jthorburn@thorburnlawgroup.com

- and -

Susan Burns (MN Bar No. 0133991)
S. Burns Legal PLLC
420 Summit Ave. W, Suite 403
St. Paul, Minnesota 55102
(612) 306-4143
susan@sburnslegal.com

***Attorneys for Plaintiff***

29

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| THOMAS MONTI; LIFTED LIQUIDS, INC.; and THE HAPPY CACTUS APOTHECARY LLC, | § § § § § | |
| Plaintiffs, | § § | Civil Action No. _____ |
| v. | § § § | |
| IMELDA GARCIA, in her official capacity as Interim Commissioner of the Texas Department of State Health Services, KEN PAXTON, in his official capacity as Attorney General of Texas; KENNETH A. CUSICK, in his official capacity as Galveston County Criminal District Attorney; and JIMMY FULLEN, in his official capacity as Sheriff of Galveston County, | § § § § § § § § § § § | |
| Defendants. | § § | |

**PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND EXPEDITED PRELIMINARY INJUNCTION HEARING**

TO THE HONORABLE COURT:

Plaintiffs Thomas Monti, Lifted Liquids, Inc., and The Happy Cactus Apothecary LLC move under Federal Rule of Civil Procedure 65 for a temporary restraining order preserving the status quo until the Court can conduct an expedited preliminary injunction hearing. The Texas Department of State Health Services (the "Department" or "DSHS") has announced that, beginning today, July 31, 2026, it will enforce reinstated Schedule I definitions of "Tetrahydrocannabinols" and "Marihuana Extract" (the "Reinstated Definitions") that treat the THCs in hemp other than delta-9 THC as Schedule I controlled

1

substances. Unless restrained, the Reinstated Definitions immediately expose all of the Plaintiffs to significant and adverse criminal and economic consequences: subjects Mr. Monti's continued possession, use and sale of a compliant delta-8 THC product to criminal enforcement in Galveston County; forces Lifted Liquids to abandon one of its largest markets or continue operating under threat of seizure, prosecution, and unrecoverable losses; and strips The Happy Cactus Apothecary LLC — a licensed Texas manufacturer and retailer — of its only house-branded product only days before a published enforcement date, under threat of license revocation, and civil and criminal penalties.

The requested order is narrow. Plaintiffs do not ask the Court to decide whether Texas has the authority to enact a separate legislative prohibition on the minor THCs in hemp – the State has not done so. Plaintiffs ask the Court to preserve the conditions that have prevailed since the establishment of the lawful Texas Hemp Industry while it decides whether Defendants may enforce an agency classification that departs from the definition Congress enacted and the Texas Legislature adopted, that is preempted by federal law, and that fails to give constitutionally adequate notice of the line between lawful hemp and Schedule I contraband.

The same four factors govern temporary restraining orders and preliminary injunctions: likelihood of success on the merits, irreparable harm, the balance of equities, and the public interest. Each favors temporary relief.

## BACKGROUND

### I.  Congress defined hemp by delta-9 THC concentration.

2

The Agriculture Improvement Act of 2018 (the "2018 Farm Bill") defines "hemp" as Cannabis sativa L. and every part of that plant, including "all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers," with a delta-9 THC concentration not exceeding 0.3% on a dry-weight basis. 7 U.S.C. § 1639o(1). Congress simultaneously excluded hemp from the Controlled Substances Act's definition of marihuana, 21 U.S.C. § 802(16)(B)(i), and amended Schedule I to exclude "tetrahydrocannabinols in hemp," *id*. § 812(c), Schedule I(c)(17). The statutory text does not establish delta-8 THC concentration as a separate dividing line, and it does not exclude a THC from hemp merely it is not delta-9 or because the product was produced through a particular manufacturing method or process. The sole federal dividing line between lawful hemp and a controlled substance is the concentration of delta-9 THC.

In 2020, the Drug Enforcement Administration (the "DEA") conformed its schedule to the 2018 Farm Bill to exclude from "tetrahydrocannabinols" any material, compound, mixture, or preparation falling within the statutory definition of hemp. 21 C.F.R. § 1308.11(d)(31)(ii). The DEA explained that it was merely conforming its regulations to Congress's already-effective amendments and had "no discretion" to choose a different line. 85 Fed. Reg. 51,639, 51,642 (Aug. 21, 2020) (the "DEA IFR"). The Ninth Circuit has held that hemp-derived delta-8 THC products satisfying the statutory delta-9 limit fall within the federal definition of hemp. *AK Futures LLC v. Boyd Street Distro, LLC*, 35 F.4th 682, 690-93 (9th Cir. 2022). The Fourth Circuit has since agreed that § 1639o is unambiguous on this point and that no deference is owed to a contrary agency

interpretation. *Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165, 187 (4th Cir. 2024) (following *AK Futures* and, under *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2262 (2024), owing no deference to the agency's contrary reading).

## II.    Texas adopted the federal definition, but DSHS reinstated a contrary classification.

In 2019, the Texas Legislature embraced the 2018 Farm Bill's framework by enacting its own Texas Farm Bill, whereby it adopted the federal definition of hemp, and excluded "hemp" and "the tetrahydrocannabinols in hemp" from the Texas Controlled Substances Act. Tex. Health & Safety Code § 481.002(5); see Tex. Agric. Code § 121.001. The Legislature further directed that the Department's rules must reflect that hemp-derived cannabinoids "are not considered controlled substances." Tex. Health & Safety Code § 443.204.

In response to the DEA IFR's non-discretionary conforming changes, the Department took the position it had discretion *not* to make the same conforming clarifications, and it objected to doing so. The Department later published its 2021 annual republication of its Schedules of Controlled Substances, where it made public for the first time modifications to the Schedule I listings of *(31) ("tetrahydrocannabinols") and *(58) ("marihuana extract"), taking the opposite position of the DEA IFR, reflecting language that scheduled (and thereby, criminalized) all THCs *other than* up to 0.3% delta-9 THC. This meant hemp-derived delta-8 THC would be treated as a Schedule I controlled substance even when such product is "hemp" and satisfies the statutory delta-9 THC limit.

4

Industry stakeholders challenged the Department's administrative process, and a Texas court enjoined the Reinstated Definitions for more than four and a half years. On May 1, 2026, the Supreme Court of Texas dissolved that injunction on jurisdictional and sovereign-immunity grounds, without reaching the merits and calling the challengers' statutory arguments "significant and forceful." *Texas Dep't of State Health Servs. v. Sky Marketing Corp.*, No. 23-0887, 733 S.W.3d 689 (Tex. May 1, 2026). The mandate issued last month, on June 5, 2026.

Weeks ago, on July 10, 2026, the Department published notice that the Reinstated Definitions were going into effect. 51 Tex. Reg. 4597 (July 10, 2026).

That notice carried no effective date on its face. But the State has fixed one — July 31, 2026 — and announced it only through channels: the Department's website (the medium the State maintained throughout the prior litigation was not a rule and carried no independent legal effect); and a July 29, 2026 email from the Texas Health and Human Services Commission to its voluntary listserv (which happened to be received by Plaintiff Happy Cactus). Both announcements confirmed that the Reinstated Definitions become "effective July 31, 2026" and that products labeled to contain delta-8 THC "may be detained and referred to law enforcement." If the website controls, criminal exposure begins today, July 31; if it does not, the Reinstated Definitions may already be operative. Either way, Plaintiffs face an immediate threat that cannot await ordinary motion practice.

5

## III.  The Reinstated Definitions immediately injure all three Plaintiffs.

Mr. Monti spent twenty-three years with the Illinois State Police, seventeen on SWAT. He resides in League City and manages Burners Vape/Smoke/Herb in Bacliff, both within Galveston County. He uses one-half of a delta-8 gummy each night for documented post-traumatic stress and chronic pain. The product carries a certificate of analysis and satisfies the statutory delta-9 THC limit. He also purchases, sells, and distributes other consumable hemp products that contain non-delta-9 THCs but which remain within the 0.3% delta-9 THC statutory limit of "hemp." Under the State's litigated view of the Reinstated Definitions, these products are Schedule I contraband whose continued purchase, possession, use, distribution, and sale expose him to criminal enforcement. But for the threatened enforcement, Mr. Monti would continue purchasing, selling, possessing, distributing, and using the product. Monti Decl. 4-5.

Lifted Liquids manufactures and distributes hemp-derived consumable products nationwide from a cGMP facility in Kenosha, Wisconsin. Each product is accompanied by a lot-matched, full-panel certificate of analysis confirming delta-9 THC at or below 0.3%, retrievable by batch from a public database. Texas is among Lifted Liquids' two largest markets. Since the injunction was dissolved, Lifted Liquids has accepted significant losses in returned inventory, lost distributors and shelf placement, and eliminated more than twenty positions. It has approximately $6.7 million in hemp-based inventory, divided between raw materials and finished products, whose marketability in Texas is immediately threatened by the Reinstated Definitions. But for the threatened enforcement, Lifted

6

Liquids would resume shipping its compliant products to Texas distributors immediately. Lifted Liquids Decl. 4-5.

The Happy Cactus Apothecary LLC is an Austin-based consumable-hemp licensee holding a manufacturer license and two retail registrations. Approximately ninety-eight percent of its business is hemp. Its flagship—and the only product bearing its logo—is a house-branded delta-8 product made to its specification by a white-label manufacturer in Oregon, shipped in bulk to its Austin warehouse, packaged there, and sold in its two shops and online to customers in about twenty-five states. Its supply line is entirely interstate, and every such product is verified at or below 0.3% delta-9 THC by a lot-matched certificate of analysis. The Reinstated Definitions take Happy Cactus's only logo-branded product, the one on which it built its brand and goodwill, as a means for license revocation and civil and criminal penalties. But for the threatened enforcement, Happy Cactus would continue ordering, packaging, and selling its compliant house-branded products. Happy Cactus Decl. 5-6.

## LEGAL STANDARD

A temporary restraining order is governed by the same substantive standard as a preliminary injunction. A movant must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury absent relief; (3) that the threatened injury outweighs the harm the injunction may cause the nonmovant; and (4) that relief will not disserve the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 288 (5th

7

Cir. 2012). Although preliminary relief is extraordinary, it is appropriate where enforcement is imminent and the movant clearly carries each factor. See *United States v. Abbott*, 110 F.4th 700, 706-07 (5th Cir. 2024) (en banc).

## ARGUMENT

**I.   Plaintiffs have standing, and the requested relief runs against officials with enforcement authority.**

At the preliminary-injunction stage, Plaintiffs must clearly show standing, and each does. Mr. Monti faces imminent criminal exposure from his continued possession, use, and sale of the Products at Issue—pre-enforcement injury under the credible-threat standard. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–64 (2014); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Lifted Liquids faces present lost sales, significant losses in returned inventory, disrupted distribution, and an immediate threat to approximately $6.7 million in hemp-based inventory, together with the choice between abandoning Texas or risking enforcement. Happy Cactus faces the loss of its flagship product, license revocation, and civil and criminal penalties. Each Plaintiff would continue the affected possession, use, manufacture, shipment, or sale but for the threatened enforcement. Those injuries are traceable to Defendants' threatened enforcement of the Reinstated Definitions and redressable by an order preserving the status quo. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The credible threat requires no individualized enforcement letter: the State litigated for years to establish that these products are Schedule I, has not retreated, has set an enforcement date, and—through the

8

July 29 HHSC notice—has told regulated businesses that it will detain and refer their products.

The relief runs against officials with enforcement authority over the Reinstated Definitions. Commissioner Garcia maintains, administers, and enforces the Schedules of Controlled Substances, including through the licensing, registration, embargo, and penalty authorities that reach Lifted Liquids and Happy Cactus; Attorney General Paxton possesses civil-penalty authority over consumable hemp products, triggered by the Department's request, under Section 431.058 as applied through Section 443.002; Criminal District Attorney Cusick has authority to prosecute offenses arising from the Reinstated Definitions in Galveston County, where Mr. Monti resides and works; and the Sheriff of Galveston County possesses arrest authority for those offenses in that county. Plaintiffs' due-process and Commerce Clause claims proceed under 42 U.S.C. § 1983, *Dennis v. Higgins*, 498 U.S. 439, 447-51 (1991); their preemption claim proceeds in equity under *Ex parte Young*, 209 U.S. 123 (1908), because the Supremacy Clause and the 2018 Farm Bill afford no private right of action, *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-28 (2015). Each seeks only prospective relief against officials with particular enforcement responsibilities. *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 785-87 (5th Cir. 2024).

**Sovereign immunity does not bar this suit.** The Eleventh Amendment ordinarily bars suits against a State and its officials where the State is the real party in interest, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984), but under *Ex parte*

9

*Young*, 209 U.S. 123 (1908), a suit against a state official in her official capacity for prospective relief to end an ongoing violation of federal law is not treated as a suit against the State and is not barred. That exception governs every claim here: Plaintiffs' preemption claim proceeds directly in equity, *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-28 (2015), and their Section 1983 due-process and Commerce Clause claims—seeking only prospective, official-capacity relief—proceed under the same doctrine, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). The inquiry is "straightforward": the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Each Defendant has the particular connection to enforcement that *Young* requires—not a mere general duty: the Commissioner maintains and enforces the Schedules and wields the licensing, embargo, and penalty authorities of Chapters 431 and 443; the Attorney General holds civil-penalty authority under Section 431.058 as applied through Section 443.002; the Criminal District Attorney may prosecute offenses under Sections 481.113, 481.116 and 481.119 in Galveston County; and the Sheriff of Galveston County may arrest for those offenses. *City of Austin v. Paxton*, 943 F.3d 993, 998-1002 (5th Cir. 2019); *Air Evac EMS, Inc. v. Tex. Dep't of Ins.*, 851 F.3d 507, 517-19 (5th Cir. 2017). The State's success on sovereign immunity in *Sky Marketing* does not change this analysis: that decision resolved the vendors' state-law ultra vires claims under Texas sovereign immunity and disclaimed any ruling on the merits, 733 S.W.3d at 694, whereas whether the Eleventh Amendment bars these federal claims is a distinct question of federal

10

law that the *Ex parte Young* exception answers and that a state court's immunity ruling does not foreclose.

**Abstention is not warranted.** Abstention is "the exception, not the rule," and federal courts have a "virtually unflagging obligation" to exercise the jurisdiction Congress confers. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). *Pullman* abstention applies only where an unsettled question of state law could be construed to avoid or modify a federal constitutional question, *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941), and neither condition is met. The meaning of the Texas hemp definitions turns on no unsettled question of state law: the Legislature adopted the federal definition in the words Congress used, and the Supreme Court of Texas has already construed the relevant provisions while expressly declining to reach the federal merits. *Sky Marketing*, 733 S.W.3d at 694. No state-court construction could avoid Plaintiffs' preemption claim, which is a question of federal law, and their fair-notice claim arises from the conflict among provisions the State itself maintains. Abstention is especially improper where, as here, plaintiffs face imminent criminal enforcement and the delay of parallel state proceedings would itself inflict the irreparable injury this Motion seeks to prevent. *Houston v. Hill*, 482 U.S. 451, 467-68 (1987). *Younger* abstention is likewise unavailable because no Plaintiff is a party to any pending state enforcement proceeding. *Younger v. Harris*, 401 U.S. 37 (1971).

## II. Plaintiffs are substantially likely to succeed on the merits.

11

Plaintiffs are likely to prevail on each of three independent grounds. The premise common to all three is a question of statutory text: Congress chose a single, measurable criterion — a delta-9 THC concentration of 0.3% — as the line between lawful hemp and controlled marihuana, and neither the presence of other THCs the plant produces nor the method by which a THC is derived moves a product across it. 7 U.S.C. § 1639o(1); 21 U.S.C. §§ 802(16)(B)(i), 812(c). The DEA conformed its regulations to that text and acknowledged it had "no discretion" to draw a different line, 85 Fed. Reg. at 51,642, and the leading courts of appeals have applied the text as written, *AK Futures*, 35 F.4th at 690-93; *Anderson*, 117 F.4th at 187. Plaintiffs are entitled to a declaration to that effect and, for the reasons below, to relief on each count.

### A. The Reinstated Definitions are void for vagueness.

Because the Reinstated Definitions are the definitional predicate for criminal liability — the manufacture, delivery, or possession of a Penalty Group 2 substance is an offense, Tex. Health & Safety Code §§ 481.113, 481.116, and an offense also attaches to a scheduled substance placed in no penalty group, id. § 481.119 — they are measured against the most exacting vagueness standard. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982); see *Ford Motor Co. v. Texas Dep't of Transp.*, 264 F.3d 493, 508-09 (5th Cir. 2001). They fail it. A single compliant hemp-derived product sits at the intersection of provisions that give conflicting answers: § 481.002(5) excludes the THCs in hemp from "controlled substance," reinstated *(31) returns them to Schedule I, and Penalty Group 2 reaches "Tetrahydrocannabinols, other than marihuana,"

§ 481.103(a)(1), though hemp is not marihuana, id. § 481.002(26)(F). The catch-all —
substances of "similar chemical structure and pharmacological activity" — has no
ascertainable content, and the sole safe harbor the State acknowledges (delta-8 "naturally
occurring" at amounts the Supreme Court of Texas called undetectable) is one no
manufacturer can formulate to or verify. No field or laboratory test distinguishes a naturally
occurring minor THC from a converted one in a finished product, and the Reinstated
Definitions provide no objective method by which a manufacturer, retailer, consumer,
laboratory, or enforcement officer can determine on which side of the criminal line a
finished product falls. A criminal law this indeterminate denies fair notice and invites
arbitrary enforcement, and it is not saved by the existence of some clear applications.
*Johnson v. United States*, 576 U.S. 591, 602-03 (2015); *Sessions v. Dimaya*, 584 U.S. 148
(2018); *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983); *Grayned v. City of Rockford*,
408 U.S. 104, 108-09 (1972). Plaintiffs are substantially likely to prevail under 42 U.S.C.
§ 1983 on their facial and as-applied due-process claims.

**B.  The Reinstated Definitions are preempted by the 2018 Farm Bill.**

Congress removed the THCs in hemp from the Controlled Substances Act to
establish a lawful national commodity and the interstate market for it, and two preemption
principles independently invalidate the Reinstated Definitions. First, express preemption:
Congress provided that "[n]o State … shall prohibit the transportation or shipment of hemp
or hemp products … through the State." 2018 Farm Bill § 10114(b). The Reinstated
Definitions criminalize the possession and delivery of the THCs in hemp with no carve-
out for interstate movement — not even the continuous through-transit § 10114(b) protects;

13

and Texas, unlike the State whose ban survived in *Bio Gen LLC v. Sanders*, 142 F.4th 591 (8th Cir. 2025), enacted no transportation savings clause. *Loki Brands, LLC v. Platkin*, 2024 WL 4457485 (D.N.J. 2024); *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541 (7th Cir. 2020). Texas's own statutes confirm the conflict: where state law conflicts with federal law on the interstate transportation of hemp, "federal law controls," Tex. Agric. Code § 122.353, and consumable hemp products "may be legally transported across state lines … in a manner … consistent with federal law," Tex. Health & Safety Code § 443.207. Second, conflict and obstacle preemption: by returning to Schedule I the commodity Congress decontrolled, the Reinstated Definitions stand as an obstacle to Congress's purposes and objectives. *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000). The production savings clause, 7 U.S.C. § 1639p(a)(3)(A), does not save them: it preserves a *State's* legislative choice to regulate hemp production more stringently, whereas the Reinstated Definitions are an *agency* rule reaching finished products that contradicts the Texas Legislature's own decontrol. Plaintiffs proceed under *Ex parte Young* and are likely to prevail.

## C. The Reinstated Definitions impose an unconstitutional burden on interstate commerce.

Even assuming Texas may regulate hemp products sold within its borders, the Reinstated Definitions sever a lawful national market—compelling an out-of-state manufacturer to abandon one of its two largest markets, immediately threatening approximately $6.7 million in inventory, and requiring it to retrieve compliant products

14

from Texas as contraband, while falling on a Texas retailer whose Oregon-to-Texas supply line and sales to customers in about twenty-five states are entirely interstate. Those burdens are clearly excessive in relation to any asserted local benefit, particularly because Texas retains less burdensome means of protecting public health through its existing age, labeling, testing, adulteration, delta-9-THC concentration, and licensing requirements. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). The claim proceeds under 42 U.S.C. § 1983. *Dennis v. Higgins*, 498 U.S. 439, 447–51 (1991).

### III. Plaintiffs face immediate and irreparable harm.

The threatened injuries are immediate. Beginning today, Mr. Monti must either stop possessing and selling a product he uses nightly for documented conditions or risk arrest, prosecution, and loss of liberty. The credible threat of criminal enforcement is not a compensable injury that can be repaired after judgment, and a plaintiff need not expose himself to prosecution to obtain review of an allegedly unconstitutional classification.

Lifted Liquids and Happy Cactus likewise face injuries that damages cannot remedy. Each must withdraw products, lose customers, shelf space, and distribution relationships, and reduce its workforce, or continue operating under threat of seizure and enforcement; for Happy Cactus the Reinstated Definitions take the only product bearing its logo and threaten its license. Lost goodwill, customer relationships, market access, and business continuity are difficult or impossible to quantify, and sovereign immunity bars recovery of these losses from the state officials who inflict them. See *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279-80 (5th Cir. 2012).

15

The harm is not self-inflicted. Plaintiffs operated for years under the statutory definition and a state-court injunction. The Department republished the Reinstated Definitions on July 10th, announcing a July 31st effective date, leaving only days to choose between compliance and criminal enforcement exposure.

Notably, Congress has enacted amendments to the 2018 Farm Bill scheduled to take effect on November 12, 2026, that will substantially impact the hemp industry, but Congress chose not to make those amendments effective immediately. Until that date arrives — and unless Congress amends, delays, or repeals them — the governing federal law remains the law in force today. Plaintiffs seek to preserve the legal status Congress itself left in place; Defendants should not be permitted to accelerate Congress's timetable through immediate agency enforcement. Urgent temporary relief is necessary to prevent the controversy from being resolved through irreversible injury before the Court can adjudicate it.

## IV. The balance of equities and the public interest favor preserving the status quo.

When the government is the opposing party, the balance of equities and the public interest merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Both favor a short order preserving conditions that have existed since 2019 while the Court conducts an expedited hearing. Defendants suffer no cognizable injury from being temporarily prevented from enforcing a classification that is likely contrary to federal law or constitutionally vague. The requested order does not prevent Texas from enforcing generally applicable health, labeling, age-restriction, misbranding, adulteration, delta-9-THC concentration, or

16

licensing requirements — every legitimate enforcement tool remains available; it protects Plaintiffs and the Products at Issue while the Court determines the governing law.

By contrast, denial exposes Plaintiffs to criminal liability, loss of liberty, product seizure, and destruction of established businesses. The public has a strong interest in fair notice before criminal sanctions attach and in government officials complying with federal law. See *Wages & White Lion Investments, L.L.C. v. FDA*, 16 F.4th 1130, 1143 (5th Cir. 2021). The public also benefits from orderly judicial resolution rather than abrupt enforcement of a classification whose meaning and effective date remain disputed.

## V.  The Court should require no bond, or only a nominal bond.

Rule 65(c) gives the Court discretion to set security in an amount it considers proper. Because the requested order merely preserves the long-standing status quo, Defendants identify no monetary loss from temporary nonenforcement against these Plaintiffs. Plaintiffs therefore request that security be waived or set at a nominal amount of $100. See *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996).

## VI.  The requested relief is specific, limited, and administrable.

Plaintiffs request an order temporarily restraining Defendants, in their official capacities, together with their officers, agents, servants, employees, attorneys, and other persons in active concert or participation with them who receive actual notice of the order, from initiating, pursuing, or threatening civil, administrative, or criminal enforcement; embargoing, detaining, seizing, or referring for prosecution; or imposing penalties or adverse licensing action, to the extent such action is premised on Schedule I items *(31)

17

Tetrahydrocannabinol and *(58) Marihuana Extract, as republished July 10, 2026, with respect to the Products at Issue against the Plaintiffs and any other person or entity in Texas; in each case where the product contains no more than 0.3% delta-9 THC on a dry-weight basis. Alternatively, if the Court concludes statewide relief is unavailable, Plaintiffs request an order restraining enforcement against Plaintiffs and against their officers, employees, retailers, distributors, carriers, suppliers, customers, and other persons or entities engaged in transactions involving Plaintiffs' Products at Issue.

The order should remain in effect for fourteen days unless extended by agreement or for good cause, and the Court should set an expedited preliminary injunction hearing. Plaintiffs do not seek an ex parte order; counsel will provide immediate notice and confer with Defendants concerning availability for a prompt hearing. Counsel's Rule 65(b) certification, attached hereto.

## CONCLUSION

The Court should enter the attached temporary restraining order, preserve the status quo as to Plaintiffs and the Products at Issue, waive or impose only nominal security, and set an expedited preliminary injunction hearing.

Dated: July 30, 2026

Respectfully submitted,
*/s/ Andrea Hope Steel*
Andrea Hope Steel (TX Bar No. 24064320)
Imani Hutty (NC Bar No. 64346)*
The Banks Law Firm, P.A.
1415 Louisiana, 18th Floor
Houston, Texas 77002
(281) 755-3850

18

(919) 281-9151
asteel@bankslawfirm.com
ihutty@bankslawfirm.com
*Pro hac vice application forthcoming


- and -

James D. Thorburn (CO Bar No. 21017)
Thorburn Law Group, LLC
6312 Fiddlers Green Circle, Suite 300E
Greenwood Village, Colorado 80111
(303) 646-3482
jthorburn@thorburnlawgroup.com

- and -

Susan Burns (MN Bar No. 0133991)
S. Burns Legal PLLC
420 Summit Ave. W, Suite 403
St. Paul, Minnesota 55102
(612) 306-4143
susan@sburnslegal.com

***Attorneys for Plaintiffs***

19

## CERTIFICATE OF CONFERENCE

On July 31, 2026, counsel for Plaintiffs contacted counsel for Defendants by email, advised them of the relief requested, and requested their position and availability for an expedited hearing. Defendants have not yet responded.

## CERTIFICATE OF SERVICE

I certify that on July 31, 2026, I served this motion and all supporting materials on Defendants by email.

/s/ *Andrea Hope Steel*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| THOMAS MONTI; LIFTED LIQUIDS, INC.; and THE HAPPY CACTUS APOTHECARY LLC, | § § § § | |
| Plaintiffs, | § | Civil Action No. _____ |
| | § | |
| v. | § § | |
| | § | |
| IMELDA GARCIA, in her official capacity as Interim Commissioner of the Texas Department of State Health Services, KEN PAXTON, in his official capacity as Attorney General of Texas; KENNETH A. CUSICK, in his official capacity as Galveston County Criminal District Attorney; and JIMMY FULLEN, in his official capacity as Sheriff of Galveston County, | § § § § § § § § § § | |
| Defendants. | § § | |

**ORDER GRANTING PLAINTIFFS' EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER AND SETTING
EXPEDITED PRELIMINARY INJUNCTION HEARING**

Before the Court is Plaintiffs' Emergency Motion for Temporary Restraining Order

and Expedited Preliminary Injunction Hearing (the "Motion"). Plaintiffs Thomas Monti,

Lifted Liquids, Inc., and The Happy Cactus Apothecary LLC seek a narrow order

preserving the status quo while the Court conducts an expedited preliminary-injunction

hearing. Specifically, Plaintiffs seek to restrain Defendants from enforcing reinstated

Schedule I definitions of "Tetrahydrocannabinols" (item *(31)) and "Marihuana Extract"

(item *(58)), republished at 51 Tex. Reg. 4597 (July 10, 2026) (the "Reinstated

Definitions"), against any person or entity in Texas based solely on the manufacture,

possession, transportation, distribution, delivery, purchase, sale or use of consumable hemp products that may contain THCs other than delta-9 THC, so long as such product does not contain delta-9 THC concentration in excess of 0.3% on a dry-weight basis (the "Products at Issue"). Alternatively, if the Court concludes statewide relief is unavailable, Plaintiffs request an order restraining enforcement against Plaintiffs and against their officers, employees, retailers, distributors, carriers, suppliers, customers, and other persons or entities engaged in transactions involving Plaintiffs' Products at Issue. Having considered the Motion, the declarations and exhibits, the applicable law, and the record, the Court finds that Plaintiffs have satisfied the requirements for temporary relief. The Motion is GRANTED as set forth below.

## I. Background

The Agriculture Improvement Act of 2018 (the "2018 Farm Bill") defines "hemp" as Cannabis sativa L. and every part of that plant, including "all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers," with a delta-9 THC concentration not exceeding 0.3% on a dry-weight basis. 7 U.S.C. § 1639o(1). Congress excluded hemp from the Controlled Substances Act's definition of marihuana, 21 U.S.C. § 802(16)(B)(i), and amended Schedule I to exclude "tetrahydrocannabinols in hemp," id. § 812(c), Schedule I(c)(17). The statutory text does not establish a separate delta-8 THC concentration limit or exclude a THC from hemp because it was produced through a particular process. The federal dividing line is the concentration of delta-9 THC.

In 2020, the Drug Enforcement Administration conformed its schedule to the statute and explained that it had "no discretion" to draw a different line. 21 C.F.R. §

1308.11(d)(31)(ii); 85 Fed. Reg. 51,639, 51,642 (Aug. 21, 2020). The Ninth and Fourth Circuits have held that hemp-derived delta-8 THC products satisfying the statutory delta-9 limit fall within the federal definition of hemp. *AK Futures LLC v. Boyd Street Distro, LLC*, 35 F.4th 682, 690–93 (9th Cir. 2022); *Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165, 187 (4th Cir. 2024).

Texas adopted the federal definition of hemp and excluded "hemp" and "the tetrahydrocannabinols in hemp" from the Texas Controlled Substances Act. Tex. Health & Safety Code § 481.002(5); see Tex. Agric. Code § 121.001. Texas law further directs that the Department's rules must reflect that hemp-derived cannabinoids "are not considered controlled substances." Tex. Health & Safety Code § 443.204. DSHS nevertheless reinstated Schedule I items *(31) and *(58), taking the position that hemp-derived delta-8 THC may be treated as a Schedule I controlled substance even when a product satisfies the statutory delta-9 THC limit. The Department republished the Reinstated Definitions on July 10, 2026, and announced through its website and a July 29, 2026 notice that enforcement would begin July 31, 2026 and that products labeled to contain delta-8 THC "may be detained and referred to law enforcement."

The threatened enforcement directly affects all three Plaintiffs. Mr. Monti resides in League City, works at a hemp retailer in Bacliff, and uses and sells a certificate-supported delta-8 product. Lifted Liquids manufactures certificate-supported hemp products in Wisconsin and has accepted significant losses in returned inventory, lost distribution and shelf placement, eliminated more than twenty positions, and faces an immediate threat to the Texas marketability of approximately $6.7 million in inventory. Happy Cactus is an

Austin consumable-hemp licensee whose only house-branded product is a certificate-supported delta-8 THC product manufactured in Oregon, shipped to Texas, packaged in Texas, and sold in approximately twenty-five states. But for the threatened enforcement, each Plaintiff would continue the conduct described in the Motion.

## II. Legal Standard

A temporary restraining order is governed by the same substantive standard as a preliminary injunction. Plaintiffs must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury absent relief; (3) that the threatened injury outweighs any harm the injunction may cause Defendants; and (4) that relief will not disserve the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 288 (5th Cir. 2012).

## III. Standing, Jurisdiction, and Enforcement Authority

Plaintiffs have standing. Mr. Monti faces a credible and imminent threat of criminal enforcement for his continued possession, use, and sale of the identified product. Lifted Liquids faces present economic injury, returned inventory, disrupted distribution, and the choice between abandoning Texas or risking enforcement. Happy Cactus faces loss of its only house-branded product, adverse licensing action, and civil and criminal penalties. These injuries are traceable to threatened enforcement of the Reinstated Definitions and redressable by the requested order. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–64 (2014); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. Plaintiffs' Due Process and Commerce Clause claims proceed under 42 U.S.C. § 1983, and the preemption claim proceeds in equity under *Ex parte Young*, 209 U.S. 123 (1908). Each Defendant has a particular connection to enforcement of the challenged classifications: the Commissioner administers the schedules and relevant licensing and embargo authorities; the Attorney General possesses civil-penalty authority; the Criminal District Attorney possesses prosecution authority in Galveston County; and the Sheriff possesses arrest authority there. Plaintiffs seek only prospective relief against official-capacity Defendants. Sovereign immunity therefore does not bar the requested relief.

## IV.  Plaintiffs Are Substantially Likely to Succeed on the Merits

### A.  The Reinstated Definitions likely violate due process.

A criminal prohibition must provide ordinary people fair notice of the conduct it prohibits and must supply standards sufficient to prevent arbitrary enforcement. The challenged Texas provisions provide conflicting answers: Section 481.002(5) excludes the THCs in hemp from the term "controlled substance," while the Reinstated Definitions return hemp-derived THCs other than delta-9 THC to Schedule I. The State has also suggested that delta-8 THC "naturally occurring" in hemp is permissible, but no rule, guidance, required documentation, objective testing method, general standard, or laboratory standard tells a regulated person how to establish that distinction in a finished product. Currently, there is no generally accepted standard that exists – nor any field or laboratory test that is able to determine – which THCs may naturally occur and in what amounts. Nor can testing determine the method of manufacture of any particular THC

molecule in a finished product, or whether that has any bearing on whether one is "naturally occurring" in any particular amount. Plaintiffs have therefore shown a substantial likelihood that the Reinstated Definitions fail to provide fair notice and invite arbitrary enforcement. *Johnson v. United States*, 576 U.S. 591, 595, 602–03 (2015); *Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983); *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972).

**B.  The Reinstated Definitions are likely preempted by the 2018 Farm Bill.**

Congress expressly provided that "[n]o State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 . . . through the State or the territory of the Indian Tribe, as applicable." 2018 Farm Bill § 10114(b). The Reinstated Definitions classify the THCs in hemp as Schedule I substances without an exception for interstate transportation or shipment. Texas law itself provides that federal law controls where state law conflicts concerning interstate transportation of hemp and recognizes that consumable hemp products may be transported across state lines consistently with federal law. Tex. Agric. Code § 122.353; Tex. Health & Safety Code § 443.207. Plaintiffs have shown a substantial likelihood that the Reinstated Definitions are expressly preempted as applied to protected interstate transportation and shipment and also stand as an obstacle to Congress's decision to remove hemp and the THCs in hemp from Schedule I. *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 373 (2000).

**C.  The Reinstated Definitions likely impose an unconstitutional burden on interstate commerce.**

The Reinstated Definitions substantially burden a lawful interstate market. They compel an out-of-state manufacturer to abandon one of its largest markets, threaten approximately $6.7 million in inventory, require retrieval of compliant products from Texas, and disrupt Happy Cactus's Oregon-to-Texas supply line and sales to customers in approximately twenty-five states. Those burdens appear clearly excessive in relation to the asserted local benefits, particularly because Texas retains less burdensome tools—including age, labeling, testing, adulteration, delta-9-THC concentration, licensing, and registration requirements, as well as authority to enforce against mislabeled products—to address public-health concerns. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

## V.  Plaintiffs Face Immediate and Irreparable Harm

Absent relief, Mr. Monti must cease possessing, using, and selling the identified product or risk arrest, prosecution, and loss of liberty. Lifted Liquids and Happy Cactus must withdraw products, lose customers, shelf space, market access, goodwill, and distribution relationships, reduce their workforces, or operate under threat of seizure and enforcement. Happy Cactus also faces loss of its only house-branded product and adverse licensing action. These injuries are difficult or impossible to quantify, and sovereign immunity prevents recovery of damages from the state officials who would cause them. *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279–80 (5th Cir. 2012).

The threatened harm is not self-inflicted. Plaintiffs operated for years under the statutory definitions and during a state-court injunction. Congress has enacted amendments

scheduled to take effect on November 12, 2026, but Congress chose not to make those amendments immediately effective. The governing federal law remains the law presently in force. Temporary relief preserves the legal status Congress left in place and prevents the controversy from being resolved through irreversible injury before the Court can adjudicate it.

## VI.  The Balance of Equities and Public Interest Favor Relief

When the government is the opposing party, the balance of equities and public interest merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). A short order preserving the status quo imposes no cognizable injury on Defendants, particularly because the Order leaves all generally applicable health, labeling, age-restriction, adulteration, delta-9-THC concentration, licensing, registration requirements, and other consumer safety laws fully enforceable. Denial, by contrast, exposes Plaintiffs to criminal liability, loss of liberty, product seizure, and potentially irreparable destruction of established businesses. The public has a strong interest in fair notice before criminal sanctions attach, compliance with federal law, and orderly judicial resolution of disputed classifications.

## VII.  Security

Rule 65(c) gives the Court discretion to set security in an amount it considers proper. Because this Order merely preserves the status quo and Defendants have identified no monetary loss from temporary nonenforcement against these Plaintiffs and the Products at Issue, the Court sets security in the nominal amount of $100. See *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996).

## VIII.  Order

For the reasons stated above, which are incorporated as the Court's findings under Federal Rule of Civil Procedure 65(d)(1), Plaintiffs' Emergency Motion for Temporary Restraining Order is GRANTED. The Court ORDERS as follows:

1. Defendants Imelda Garcia, Ken Paxton, Kenneth A. Cusick, and Jimmy Fullen, in their official capacities, together with their officers, agents, servants, employees, attorneys, and other persons in active concert or participation with them who receive actual notice of this Order, are TEMPORARILY RESTRAINED from initiating, pursuing, or threatening civil, administrative, or criminal enforcement; embargoing, detaining, seizing, or referring for prosecution; or imposing penalties or adverse licensing action, to the extent such action is premised on Schedule I items *(31) and *(58), as republished at 51 Tex. Reg. 4597 (July 10, 2026), with respect to the Products at Issue against the Plaintiffs and any other person or entity in Texas; in each case only where the product contains no more than 0.3% delta-9 THC on a dry-weight basis.

2. This Order does not restrain Defendants from enforcing generally applicable health, labeling, age-restriction, adulteration, mislabeling, delta-9-THC concentration, licensing, or registration requirements, or from taking action based on an independent and sufficient ground unrelated to the Reinstated Definitions.

3. Plaintiffs shall post security in the amount of $100 with the Clerk of Court by _____, 2026, at _____ __.m. This Order becomes effective upon posting of the required security.

4. This Order shall remain in effect for fourteen (14) days after it becomes effective, unless extended by the Court for good cause or by the parties' consent. Fed. R. Civ. P. 65(b)(2).

5. A hearing on Plaintiffs' request for a preliminary injunction is set for _____, 2026, at _____ ___.m., in Courtroom _____. Defendants shall file any response by _____, 2026, and Plaintiffs shall file any reply by _____, 2026.

6. Plaintiffs shall promptly serve this Order, the Motion, the supporting declarations, and the exhibits on Defendants and shall file proof of service. Defendants shall provide actual notice of this Order to those officers, agents, servants, employees, and attorneys whose duties include enforcement against Plaintiffs or the Products at Issue.

**IT IS SO ORDERED.**

Signed this _____ day of _____, 2026, at _____ ___.m.

_____
**UNITED STATES DISTRICT JUDGE**

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### GALVESTON DIVISION

### DECLARATION OF LIFTED LIQUIDS, INC.

**Declaration of Nicholas Warrender**

I, **Nicholas Warrender**, declare as follows:

## I. Background

1. My name is Nicholas Warrender.

2. I am over the age of eighteen and competent to testify to the matters stated herein.

3. I submit this declaration based upon my personal knowledge. If called as a witness, I could and would testify competently to the facts stated below.

4. I am the Chief Executive Officer of Lifted Liquids, Inc., a C corporation that manufactures and distributes hemp-based products. The company is based in Wisconsin.

5. I am authorized to speak on behalf of the company.

6. I have held this position since 2020.

7. My responsibilities include oversight of the company's operations, sales, regulatory compliance, customer relationships, and interstate commerce activities.

8. Attached as Exhibit D1-A is a true and correct copy of Articles of Incorporation for Lifted Liquids, Inc.

## II. Company Background

9. Lifted Liquids, Inc. is organized under the laws of Illinois, and maintains its principal place of business in Wisconsin.

1

10. Lifted Liquids, Inc. manufactures, distributes, markets, and sells hemp-derived cannabinoid products, including Delta-8 tetrahydrocannabinol (Delta-8 THC). The company sells into Texas distillate, gummies, and beverages.

11. The products that would be affected by the challenged law include all of the company's hemp-based offerings.

12. Approximately 49% of the company's revenue during the six months ended June 30, 2026 was attributable to hemp-derived products.

13. The company has conducted business and shipped products into the following U.S. states and territories: AL, AR, AZ, CA, CO, CT, DC, DE, FL, GA, GU, HI, IA, IL, IN, KS, KY, LA, MA, MD, ME, MI, MN, MO, MS, MT, NC, ND, NE, NH, NJ, NM, NV, NY, OH, OK, OR, PA, PR, RI, SC, SD, TN, TX, UT, VA, VT, WA, WI, WV, WY.

14. Texas is an important market for the company and benefits from the company's operations through sales and franchise tax collections. During the six months ended June 30, 2026, Lifted remitted approximately $40,060 in sales taxes to the State of Texas. The company also paid $24,703 in Texas franchise taxes in April 2026.

15. Attached as Exhibit D1-B is a true and correct copy of Texas Franchise Tax Account Status for Lifted Liquids, Inc.

## III. Compliance

16. The company has taken numerous steps to comply with applicable federal and state laws, including:

    (a) obtaining laboratory testing;

2

(b) maintaining Certificates of Analysis;

(c) complying with labeling requirements;

(d) monitoring regulatory developments; and

(e) communicating with regulatory agencies as appropriate.

17. The company tests all raw materials upon arrival at its facility and places them on hold until results are received and confirmed. Each batch of finished products is sent for testing at approved third-party laboratories.

18. The company utilizes the following third-party laboratories: Pharm Labs LLC (San Diego, California) and KCA Laboratories, LLC (Lexington, Kentucky).

19. The company holds applicable Texas tax registrations, including Texas Franchise Tax and Sales and Use Taxpayer No. 32079673110.

20. Attached as Exhibit D1-C is a true and correct copy of Texas DSHS Consumable Hemp Product Retail Registration for Lifted Liquids, Inc. (Retail Hemp Registration).

## IV. Interstate Commerce

21. The company regularly purchases products and materials through interstate commerce and regularly ships products across state lines.

22. During the six months ended June 30, 2026, approximately 81.05% of the company's sales were derived from interstate sales. During the year ended December 31, 2025, approximately 82.03% of the company's sales were derived from interstate sales.

3

23. During the six months ended June 30, 2026, approximately 17.62% of the company's sales were made to customers in Texas. During the year ended December 31, 2025, approximately 24.53% of the company's sales were made to customers in Texas.

24. Annual revenue from Texas: 2023 — $12,308,420; 2024 — $7,188,213; 2025 — $9,778,599.

25. Monthly Texas sales have averaged roughly $813,201 per month during 2023-2025 and decreased to approximately $566,164 per month in 2026.

26. Between 2023 and 2025, approximately 23% of the company's total revenue was derived from Texas.

27. The company has approximately 140 Texas wholesale accounts, distributors, and major retail customers.

28. Attached as Exhibit D1-D are true and correct copies of representative shipping records for Lifted Liquids, Inc.

## V. Harm

29. Because of the challenged rescheduling and clarifications to the definitions of tetrahydrocannabinol and marijuana extract made in the 2021 Schedule of Controlled Substances, the company has already suffered or reasonably expects to suffer significant business harm.

30. The company has:

    (a) lost anticipated revenue;

4

(b) experienced cancellations and returns, including 2026 year-to-date returns of more than $189,000 of hemp-derived products from Texas customers;

(c) received communications from customers, distributors, or retailers regarding the Texas law;

(d) inventory that may become unsellable or stranded: as of June 30, 2026, the company possessed approximately $6.7 million of hemp-derived raw materials and finished goods which would become mostly unsellable in Texas on July 31, 2026, resulting in a sizable loss for the business; and

(f) implemented adverse business measures in response to the law, including production cuts, staffing cuts, and sale of assets.

31. Texas is a crucial state for our business. The company has averaged annual revenue of approximately $9.7 million in Texas between 2023-2025, which results in an estimated $3.4 million loss in annual profit given our historic 35.5% profit margin.

32. Losses of this magnitude would affect all 75 current employees (the company has reduced the number of employees from 102 as of March 2026) due to the regulatory uncertainty.

33. Customers are requesting to return product, reducing order sizes, and canceling orders due to the forthcoming regulatory and criminal changes.

34. The company sales numbers have reduced significantly, and we already reduced our workforce by approximately 25% to adjust.

35. If the law takes effect, the impact would be immediate and devastating.

5

36. Attached as Exhibit D1-D are true and correct copies of potential revenue loss from Texas customer base.

37. The attached exhibits are true and correct copies of records maintained in the ordinary course of the company's business, and I am familiar with these records because of my position within the company.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on July 31, 2026, at Kenosha, Wisconsin.

Nick Warrender (Jul 31, 2026 12:12:13 CDT)

Nicholas Warrender

Chief Executive Officer, Lifted Liquids, Inc.

6

# PLAINTIFF EXHIBIT

# D1-A

FORM **BCA 2.10**
**ARTICLES OF INCORPORATION**
Business Corporation Act

Filing Fee:    $150

File #: ___**72616529**___

Approved By: ___JXR___

**FILED**

**JAN 07 2020**

**Jesse White
Secretary of State**

1.  Corporate Name: LIFTED LIQUIDS, INC.

2.  Initial Registered Agent: GERARD M. JACOBS

| | First Name | Middle Initial | Last Name |

Initial Registered Office: 31 N SUFFOLK LN

| | Number | Street | Suite No. |

LAKE FOREST          IL       60045-4908              LAKE

| | City | ZIP Code | County |

3.  Purposes for which the Corporation is Organized:
    The transaction of any or all lawful businesses for which corporations may be incorporated under the Illinois Business Corporation Act.

4.  Authorized Shares, Issued Shares and Consideration Received:

| Class | Number of Shares Authorized | Number of Shares Proposed to be Issued | Consideration to be Received Therefor |
|---|---|---|---|
| COMMON | 100 | 100 | $ 1 |

**NAME & ADDRESS OF INCORPORATOR**

5.  The undersigned incorporator hereby declares, under penalties of perjury, that the statements made in the foregoing Articles of Incorporation are true.

Dated ___JANUARY 07___ , ___2020___    31 N. SUFFOLK LANE

| Month & Day | Year | Street |

GERARD M. JACOBS                LAKE FOREST          IL          60045

| Name | City/Town | State | ZIP Code |

This document was generated electronically at www.cyberdriveillinois.com

# PLAINTIFF EXHIBIT

# D1-B

# FRANCHISE TAX ACCOUNT STATUS

This record as of July 29, 2026 at 21:56:43

# LIFTED LIQUIDS, INC.

| | |
|---|---|
| **Texas Taxpayer Number:** | 32079673110 |
| **Mailing Address:** | 5511 95TH AVE<br>KENOSHA, WI 53144 - 7499 |
| **Right to Transact Business in Texas:** | ACTIVE |
| **State of Formation:** | IL |
| **SOS Registration Status (SOS status updated each business day):** | ACTIVE |
| **Effective SOS Registration Date:** | 06/14/2021 |
| **Texas SOS File Number:** | 0804109423 |
| **Registered Agent Name:** | CORPORATE CREATIONS NETWORK, INC. |
| **Registered Office Street Address:** | 2595 N DALLAS PKWY, SUITE 350<br>FRISCO, TX 75034 |

## Public Information Report for Year 2024

| Title | Name and Address |
|---|---|
| DIRECTOR | **BARRY R. HOLLINGSWORTH**<br>5511 95TH AVE<br>KENOSHA, WI 53144-749<br>**Source:** SOS |

| | |
|---|---|
| DFO | **BARRY R. HOLLINGSWORTH**<br>5511 95TH AVE<br>KENOSHA, WI 53144-749<br>**Source:** SOS |
| DIRECTOR | **GERARD M. JACOBS**<br>5511 95TH AVE<br>KENOSHA, WI 53144-749<br>**Source:** SOS |
| SECRETARY | **GERARD M. JACOBS**<br>5511 95TH AVE<br>KENOSHA, WI 53144-749<br>**Source:** SOS |
| DIRECTOR | **JAMES S. JACOBS**<br>5511 95TH AVE<br>KENOSHA, WI 53144-749<br>**Source:** SOS |
| DIRECTOR | **JOSHUA A. BLOOM**<br>5511 95TH AVE<br>KENOSHA, WI 53144-749<br>**Source:** SOS |
| DIRECTOR | **KEVIN J. ROCIO**<br>5511 95TH AVE<br>KENOSHA, WI 53144-749<br>**Source:** SOS |
| COO | **NICHOLAS S. WARRENDER**<br>5511 95TH AVENUE<br>KENOSHA, WI 53144-749<br>**Source:** SOS |
| DIRECTOR | **NICHOLAS S. WARRENDER**<br>5511 95TH AVE<br>KENOSHA, WI 53144-749<br>**Source:** SOS |
| DIRECTOR | **RICHARD E. MORRISSY**<br>5511 95TH AVE<br>KENOSHA, WI 53144-749<br>**Source:** SOS |
| DIRECTOR | **ROBERT T. WARRENDER II**<br>5511 95TH AVE<br>KENOSHA, WI 53144-749<br>**Source:** SOS |
| DIRECTOR | **VINCENT J. MESOLELLA**<br>5511 95TH AVE<br>KENOSHA, WI 53144-749<br>**Source:** SOS |

| PRESIDENT | **WILLIAM C. JACOBS**<br>5511 95TH AVE<br>KENOSHA, WI 53144-749<br>**Source:** SOS |
|---|---|

Information on this site is obtained from the most recent Public Information Report (PIR) submitted to the Comptroller of Public Accounts (CPA) or from the most recent PIR processed by the Secretary of State (SOS). Annual PIRs submitted to the CPA are forwarded to the SOS.

Case 3:26-cv-00254    Document 1    Filed 07/31/26 in TXSD    Page 72 of 198

# PLAINTIFF EXHIBIT

# D1-C

**From:** CJ Benincasa <cj@urb.shop>
**Sent:** Thursday, March 12, 2026 10:34 AM
**To:** Chambers,Warren (DSHS) <Warren.Chambers@dshs.texas.gov>
**Subject:** Re: FW: License/Permit Requirments

Good Morning,

Thank you so much for your response.
I have an active Retail Hemp Registration License, #13539.



| License Information | Hide Details |
|---|---|
| License Number: | **#13539** |
| License Type | **Retail Hemp Registration** |
| License Status: | **Current** |
| License Expiry: | **11/23/2026** |

# PLAINTIFF EXHIBIT

# D1-D

Accessibility Mode: ⬤ OFF ?

| License Number: 13539 | *Current Date: 07/30/2026 11:47 AM* |
|---|---|
| Name: | **LIFTED LIQUIDS INC** |
| License Type: | **Retail Hemp Registration** |
| License Status: | **Current** |
| Expiry Date: | **11/23/2026** |
| Effective Rank Date: | **11/24/2025** |

**Addresses**

| Main Address | Address | **KENOSHA , WI** |
|---|---|---|
| | | **OUT OF STATE/UNKNOWN** |
| | | **53144** |
| | | **US** |

| Mailing | Address | **KENOSHA , WI** |
|---|---|---|
| | | **OUT OF STATE/UNKNOWN** |
| | | **53144** |
| | | **US** |

| Business Loc | Address | **LIFTED LIQUIDS INC.** |
|---|---|---|
| | | **8910 58TH PLACE** |
| | | **SUITE 500** |
| | | **KENOSHA , WI** |
| | | **OUT OF STATE/UNKNOWN** |
| | | **53144** |
| | | **US** |
| | Phone Number: | **8444543833** |
| | Email: | **pregs@urb.shop** |

# PLAINTIFF EXHIBIT

# D1-E

# (Texas Customer List Representation)

| Customer Name (Shipping) | Shipping City |
| --- | --- |
| Aaron ███████ | HOUSTON |
| Aaron ███████ | HOUSTON |
| Aaron ███████ | HOUSTON |
| Aaron █████████ | Houston |
| Aaron ███████ | Granbury |
| Aaron █ | LEAGUE CITY |
| Aaron ██████ | CAMERON |
| Aaron ██████ | CAMERON |
| Aaron ██████ | CAMERON |
| Aaron ██████ | CAMERON |
| Aaron ██████ | CAMERON |
| Aaron ██████ | CAMERON |
| Aaron ██████ | CAMERON |
| Aaron ██████ | CAMERON |
| Abby ██████ | Montgomery |
| Abby ██████ | Montgomery |
| Abby ██████ | MONTGOMERY |
| Abby ██████ | MONTGOMERY |
| Abby ██████ | MONTGOMERY |
| Abby ██████ | MONTGOMERY |
| Abby █████ | Montgomery |
| Abie ██████ | COLLEGE STATION |
| Abie ██████ | COLLEGE STATION |
| Abigail ██████ | Hurst |
| Abigail ██████ | Hurst |
| Abimbola ██████ | MANOR |
| Abimbola ██████ | MANOR |
| Abimbola ██████ | MANOR |
| Abimbola ██████ | MANOR |
| Abraham █████████ | Katy |
| Abraham █████████ | Katy |

| | |
|---|---|
| Abria ▮▮▮ | Mesquite |
| Abria ▮▮▮ | Mesquite |
| Abria ▮▮▮ | Mesquite |
| Abria ▮▮▮ | Mesquite |
| Abria ▮▮▮ | Mesquite |
| Adam ▮▮▮▮ | Mckinney |
| Adam ▮▮▮▮ | Mckinney |
| Adam ▮▮▮▮ | Mckinney |
| Adam ▮▮▮▮ | Mckinney |
| Adam ▮▮▮▮ | Mckinney |
| Adam ▮▮▮▮ | Mckinney |
| Adam ▮▮▮▮ | Mckinney |
| Adam ▮▮▮ | SAN ANTONIO |
| Adam ▮▮▮ | SAN ANTONIO |
| Adam ▮▮▮ | SAN ANTONIO |
| Adam ▮▮▮ | SAN ANTONIO |
| Adam ▮▮▮▮ | FORNEY |
| Adam ▮▮▮▮ | Forney |
| Adam ▮▮▮▮ | FORNEY |
| Adam ▮▮▮▮ | San Antonio |
| Adam ▮▮▮▮ | San Antonio |
| Adam ▮▮▮▮ | San Antonio |
| Adam ▮▮ | SEABROOK |
| Adam ▮▮ | SEABROOK |
| Adam ▮▮ | SEABROOK |
| Adam ▮▮▮ | SAN ANTONIO |
| Adam ▮▮▮ | SAN ANTONIO |
| Adam ▮▮▮ | SAN ANTONIO |
| Adam ▮▮▮▮ | Crowley |
| adelbert ▮▮▮ | Houston |
| adelbert ▮▮▮ | Houston |
| adelbert ▮▮▮ | Houston |

| | |
|---|---|
| adelbert ▒ | Houston |
| adelbert ▒ | Houston |
| adelbert ▒ | Houston |
| adelbert ▒ | Houston |
| adelbert ▒ | Houston |
| adelbert ▒ | Houston |
| adelbert ▒ | Houston |
| adelbert ▒ | Houston |
| adelbert ▒ | Houston |
| adelbert ▒ | Houston |
| Adnan ▒ | Sugar Land |
| Adnan ▒ | Sugar Land |
| Adriana ▒ | San Antonio |
| Adrian ▒ | Nederland |
| Adrian ▒ | Nederland |
| Adrian ▒ | Nederland |
| Adrian ▒ | Nederland |
| Adrian ▒ | Nederland |
| Adrian ▒ | Nederland |
| Adrienne ▒ | Desoto |
| Adrienne ▒ | Desoto |
| Aerial ▒ | WILLS POINT |
| Aerial ▒ | WILLS POINT |
| Aerial ▒ | WILLS POINT |
| Aidan ▒ | SACHSE |
| Aimee ▒ | Austin |
| Aimee ▒ | Austin |
| Aimee ▒ | Austin |
| Aimee ▒ | Austin |
| Aimee ▒ | Austin |
| AJ ▒ | PROVIDENCE VILLAGE |
| AJ ▒ | PROVIDENCE VILLAGE |

| | |
|---|---|
| AJ ███ | PROVIDENCE VILLAGE |
| AJ ███ | PROVIDENCE VILLAGE |
| AJ ███ | PROVIDENCE VILLAGE |
| AJ ███ | PROVIDENCE VILLAGE |
| AJ ███ | PROVIDENCE VILLAGE |
| AJ ███ | PROVIDENCE VILLAGE |
| AJ ███ | PROVIDENCE VILLAGE |
| Alan ███ | HOUSTON |
| Alan ███ | HOUSTON |
| Alan ███ | HOUSTON |
| Alan ███ | HOUSTON |
| Alan ███ | HOUSTON |
| Alan ███ | HOUSTON |
| Alan ███ | HOUSTON |
| Alan ███ | HOUSTON |
| Alan ███ | HOUSTON |
| Alan ███ | Mckinney |
| Alan ███ | MCKINNEY |
| Alan ███ | MCKINNEY |
| Alan ███ | MCKINNEY |
| Alan ███ | Mckinney |
| Alan ███ | Mckinney |
| Alan ███ | Mckinney |
| Alberto ███ | GARLAND |
| Alberto ███ | GARLAND |
| Alberto ███ | GARLAND |
| Alberto ███ | Jersey Village |
| Alec ███ | Dallas |
| Alec ███ | Dallas |
| Alecia ███ | MARSHALL |
| Alecia ███ | MARSHALL |
| Alejandra ███ | HALTOM CITY |

| Name | City |
|---|---|
| Alejandra ███ | HALTOM CITY |
| Alejandra ███ | HALTOM CITY |
| Aleshia ███ | Winnie |
| Aleshia ███ | Winnie |
| Aleshia ███ | Winnie |
| Aleshia ███ | Winnie |
| Aleshia ███ | Winnie |
| Aleshia ███ | Winnie |
| Aleshia ███ | Winnie |
| alexa ███ | HOUSTON |
| alexa ███ | HOUSTON |
| Alex ███ | SANGER |
| Alex ███ | SANGER |
| Alex ███ | SANGER |
| Alexa ███ | Edinburg |
| Alex ███ | Princeton |
| Alexander ███ | Austin |
| Alexander ███ | Austin |
| Alexander ███ | Austin |
| Alexander ███ | Austin |
| Alexander ███ | Austin |
| Alexander ███ | Austin |
| Alexander ███ | DALLAS |
| Alexander ███ | DALLAS |
| Alexander ███ | DALLAS |
| Alexander ███ | DALLAS |
| Alexander ███ | DALLAS |
| Alexander ███ | Arlington |
| Alexander ███ | Arlington |
| Alexander ███ | Arlington |
| Alexandra ███ | SAN ANTONIO |
| Alexandra ███ | SAN ANTONIO |

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### GALVESTON DIVISION

### DECLARATION OF THE HAPPY CACTUS APOTHECARY LLC

**Declaration of Todd Harris**

I, **Todd Harris**, declare as follows:

## I. Background

1. My name is Todd Harris.

2. I am over the age of eighteen and competent to testify to the matters stated herein.

3. I submit this declaration based upon my personal knowledge. If called as a witness, I could and would testify competently to the facts stated below.

4. I am the Vice President of the Happy Cactus Apothecary, LLC (Happy Cactus), a Limited liability company, headquartered in Austin, Texas that manufactures and distributes hemp-based products.

5. I am authorized to speak on behalf of the company.

6. My responsibilities include managing day-to-day operations, managing employees, product ordering, and serving as company liaison.

## II. Company Background

7. Happy Cactus is a consumable hemp product retail business operating under the name The Happy Cactus Apothecary, LLC.

8. The company was founded in early 2020 and operates two retail locations in South and East Austin, Texas.

9. Happy Cactus maintains two retail registrations and a manufacturing ("MF") license.

1

10. Happy Cactus's business is approximately 98% consumable hemp products, with the remaining non-hemp sales limited to accessories such as candles, incense, and lighters.

11. Happy Cactus's core house brand products include Delta-8 (D8) gummies, D8 flower, and D8 topicals, and it previously manufactured its own THCA flower.

12. Happy Cactus began as a converted retail truck and has sold the same flagship D8 product line for years, investing substantial time and resources into product development, packaging, labeling, and design.

13. The flagship product is the D8 gummy, offered at 25 mg per gummy in packs of ten or thirty.

14. D8 gummies, flowers, and topicals constitute approximately 5–10% each of sales, Delta-9 edibles approximately 70%, and CBD roughly 3%.

15. Happy Cactus sells directly to consumers in-store and online and does not currently sell products wholesale.

16. Approximately 1,500–2,000 orders are completed in-store per month, with about 30–40 online orders per month, the majority of which are to Texas customers.

17. The products that would be affected by the challenged Reinstated Definitions include all of the company's house brand hemp-based offerings (gummies, flower, and topicals).

18. Happy Cactus conducts business and regularly ships products into the following U.S. states and territories: Alabama, Arkansas, Florida, Georgia, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Missouri, Nebraska, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Wisconsin, Wyoming.

18. Texas is a significant market for Happy Cactus.

2

19. Attached as Exhibit D2-A is a true and correct copy of Happy Cactus's Certificate of Formation.

20. Attached as Exhibit D2-B is a true and correct copy of Happy Cactus's Sales and Tax Permit.

## III. Compliance

22. Happy Cactus implements compliance measures including batch numbers, expiration dates, and correct labeling.

23. Happy Cactus has worked directly with the Texas Department of State Health Services (DSHS) to ensure label compliance, including correcting a missing manufacturing phone number and submitting updated labels to DSHS.

24. Happy Cactus has been inspected by DSHS four times. To the best of my knowledge, Happy Cactus has remained in good standing throughout those inspections: when DSHS tested our products, the results were favorable, and DSHS did not revoke our license or assess any inspection-related fee.

25. Happy Cactus's management personally oversees sales and shipping and has reviewed the company's business records that substantiate the facts described in this declaration.

26. Happy Cactus has relied on federal law and Texas's adoption of federal hemp standards in operating its business and has consulted attorneys and compliance professionals, including with other shops and manufacturers, when new products or issues arose.

27. Attached as Exhibits D2-C, D2-Dare true and correct copies of Certificates of Analysis for Delta-8 house brand gummies.

## IV. Interstate Commerce

28. Happy Cactus regularly purchases products and materials through interstate commerce and regularly ships products across state lines.

29. Happy Cactus receives bulk D8 gummies from an Oregon supplier, The Hemp Collect, and performs packaging at its East Austin warehouse that also serves as a retail location.

30. Happy Cactus estimates that only about 10% of products it carries are sourced within Texas, with all manufacturing materials and most wholesale products coming from out of state.

31. Happy Cactus ships products across state lines weekly, with approximately 25–40 shipments per month.

32. Happy Cactus has online customers across Texas and in approximately 20–30 other states, although about 90% of customers are Texans.

33. Happy Cactus's website blocks orders from states where such products are not lawful.

34. When shipping to destinations such as New York, packages may route through hubs like Louisville, Kentucky.

35. Happy Cactus's business materially depends on interstate commerce because nearly all manufacturing materials and most wholesale products are sourced from out of state, and the company would not exist without interstate commerce.

36. Happy Cactus's current monthly sales from D8 products are approximately $7,000, with D8 products constituting about 10–15% of monthly revenue

37. Attached as Exhibit D2-E are true and correct representative shipping records.

4

## V. Harm

38. Because of the challenged Reinstated Definitions of THC and marijuana extract made in the 2021 Schedule of Controlled Substances, Happy Cactus has already suffered or reasonably expects to suffer significant business harm.

39. Happy Cactus projects future business losses of approximately $120,000 per year associated with the prohibition on D8 sales.

40. Happy Cactus expects permanent loss of customers, damage to goodwill toward Texas consumable hemp businesses generally, and loss of market share if Delta-8 sales are prohibited.

41. Happy Cactus's curated reputation and brand recognition are closely tied to its quality D8 products, which include the only product carrying its logo.

42. Happy Cactus has a long-standing relationship with its Oregon manufacturer and expects that relationship to be harmed and costs to increase if it must stop working with them due to D8 restrictions.

43. Distributors will not carry products they cannot sell, leading to further channel contraction.

44. Happy Cactus has retail lease obligations, including approximately 2.5 years remaining on one lease and through year-end on the other, and without D8 revenue the business may be forced to cut additional staff, pivot to other industries, or consider relocating out of state.

45. DSHS enforcement actions and public confusion have already caused misinformation, customer fear, and rumors that shops are closing, resulting in customers calling to ask if Happy Cactus is closing and reduced patronage.

5

46. Happy Cactus has a significant base of older customers and other professionals who rely on D8-THC for relief without the anxiety associated with Delta-9-THC, and loss of access will harm these customers.

47. Monetary damages will not adequately remedy lost customers, lost goodwill, market share erosion, reputational harm, disruption to supplier relationships, employee reductions, and the chilling effect on lawful operations resulting from the prohibition.

48. Attached as Exhibit D2-F is a true and correct copy of the KVUE-ABC article, "Central Texas hemp retailers race to comply as THC restrictions take effect on July 31."

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on July 31, 2026, at Austin, Texas.

Todd Harris, Vice President

The Happy Cactus Apothecary LLC

6

# PLAINTIFF EXHIBIT

# D2-A

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697



Jane Nelson
Secretary of State

# Office of the Secretary of State

The undersigned, as Secretary of State of Texas, does hereby certify that the attached is a true and correct copy of each document on file in this office as described below:

The Happy Cactus Apothecary LLC
Filing Number: 803542212

Certificate of Formation                                    February 04, 2020

In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the Seal of State at my office in Austin, Texas on January 12, 2024.



Jane Nelson
Secretary of State

*Come visit us on the internet at https://www.sos.texas.gov/*

Phone: (512) 463-5555          Fax: (512) 463-5709          Dial: 7-1-1 for Relay Services
Prepared by: SOS-WEB          TID: 10266          Document: 1322068910003

# PLAINTIFF EXHIBIT

# D2-B

Comptroller eSystems | Home page

| Taxpayer/Vendor # | Assigned Account Name | Assigned Tax/Fee |
|---|---|---|
| 32073362157 | THE HAPPY CACTUS APOTHECARY LLC | Sales and Use Tax |

# PLAINTIFF EXHIBIT

# D2-C – D2-D

**Texas Tech University**
**Department of Chemistry and Biochemistry**
**Dr. Mechref Research Laboratory**
**Lubbock, TX 79409-1061**
**Tel. 806-834-8246**
**Fax. 806-742-1289**



## CERTIFICATE OF ANALYSIS

| | |
|---|---|
| **Certificate No.** | 0404 CHP-FY24-WBC-008 |
| **Received date:** | 06/06/2024 |
| **Report date:** | 06/26/2024 |
| **Firm name:** | Bee Delightful |
| **Product name:** | Buzzed Bees Hemp Delta 9 Honey. Raw Honey and 360mg TCH |
| **Product batch No.** | NA |
| **Laboratory reference:** | HEMP Folder 001 |
| **Chemicals above limit:** | None |

| Tests | Acceptable limit | Results |
|---|---|---|
| ***Metals*** | | |
| Arsenic | 1.5 ppm | *<0.0888 ppm (LOD: 0.0888 ppm; LOQ: 0.345 ppm)* |
| Cadmium | 0.3 ppm | *<0.0460 ppm (LOD: 0.0460 ppm; LOQ: 0.172 ppm)* |
| Lead | 1.0 ppm | *<0.0547 ppm (LOD: 0.0547 ppm; LOQ: 0.172 ppm)* |
| Mercury | 0.5 ppm | *<0.0224 ppm (LOD: 0.0224 ppm; LOQ: 0.0500 ppm)* |
| ***Pesticides*** | | |
| Acetamiprid | 0.2 ppm | *0.0021 ± 0.0002 ppm (LOD: 0.0006 ppm; LOQ: 0.02 ppm)* |
| Aldicarb | 0.4 ppm | *0.17 ± 0.05 ppm (LOD: 0.02 ppm; LOQ: 0.3 ppm)* |
| Azoxystrobin | 0.2 ppm | *ND (LOD: 0.0002 ppm; LOQ: 0.02 ppm)* |
| Bifenazate | 0.2 ppm | *ND (LOD: 0.02 ppm; LOQ: 0.188 ppm)* |
| Boscalid | 0.2 ppm | *ND (LOD: 0.001 ppm; LOQ: 0.02 ppm)* |
| Carbaryl | 0.5 ppm | *ND (LOD: 0.0003 ppm; LOQ: 0.02 ppm)* |
| Carbofuran | 0.2 ppm | *ND (LOD: 0.0007 ppm; LOQ: 0.02 ppm)* |
| Chlorantraniliprole | 0.2 ppm | *ND (LOD: 0.002 ppm; LOQ: 0.02 ppm)* |
| Chlorpyrifos | 0.6 ppm | *ND (LOD: 0.002 ppm; LOQ: 0.02 ppm)* |
| Cypermethrin | 18.0 ppm | *ND (LOD: 0.08 ppm; LOQ: 0.16 ppm)* |
| Diazinon | 2.6 ppm | *ND (LOD: 0.0002 ppm; LOQ: 0.02 ppm)* |
| Dichlorvos | 0.1 ppm | *ND (LOD: 0.001 ppm; LOQ: 0.02 ppm)* |
| Ethoprophos | 0.4 ppm | *ND (LOD: 0.004 ppm; LOQ: 0.02 ppm)* |
| Etofenprox | 0.4 ppm | *ND (LOD: 0.0007 ppm; LOQ: 0.02 ppm)* |
| Fipronil | 1.0 ppm | *ND (LOD: 0.03 ppm; LOQ: 0.09 ppm)* |
| Flonicamid | 1.0 ppm | *0.0114 ± 0.0006 ppm (LOD: 0.007 ppm; LOQ: 0.02 ppm)* |
| Imidacloprid | 0.4 ppm | *0.0018 ± 0.0003 ppm (LOD: 0.002 ppm; LOQ: 0.02 ppm)* |
| Metalaxyl | 0.2 ppm | *ND (LOD: 0.002 ppm; LOQ: 0.02 ppm)* |
| Methiocarb | 0.4 ppm | *ND (LOD: 0.002 ppm; LOQ: 0.02 ppm)* |
| Methomyl | 0.4 ppm | *0.0111 ± 0.0006 ppm (LOD: 0.003 ppm; LOQ: 0.02 ppm)* |
| Methyl parathion | 8.5 ppm | *ND (LOD: 0.03 ppm; LOQ: 0.08 ppm)* |
| Myclobutanil | 0.3 ppm | *ND (LOD: 0.003 ppm; LOQ: 0.02 ppm)* |
| Oxamyl | 1.0 ppm | *ND (LOD: 0.02 ppm; LOQ: 0.093 ppm)* |
| Permethrin | 1.1 ppm | *ND (LOD: 0.002 ppm; LOQ: 0.02 ppm)* |
| Pyridaben | 0.2 ppm | *ND (LOD: 0.001 ppm; LOQ: 0.02 ppm)* |
| Spiroxamine | 2.0 ppm | *ND (LOD: 0.0004 ppm; LOQ: 0.02 ppm)* |
| Tebuconazole | 0.4 ppm | *ND (LOD: 0.0009 ppm; LOQ: 0.02 ppm)* |
| Thiacloprid | 0.2 ppm | *0.0241 ± 0.0003 ppm (LOD: 0.0006 ppm; LOQ: 0.02 ppm)* |
| Thiamethoxam | 0.2 ppm | *0.0026 ± 0.0002 ppm (LOD: 0.0002 ppm; LOQ: 0.02 ppm)* |
| ***Cannabinoids*** | | |
| **(−)-*trans*-Δ⁹-tetrahydrocannabinol (THC)** | 0.3% | *0.011 ± 0.001% (110 ± 10 ppm) (LOD: 0.0004 ppm; LOQ: 0.04 ppm)* |

| Microbiological | |
|---|---|
| Total combined yeast molds counts | *1 CFU/mL* |
| Salmonella | *ND* |
| E. coli | *ND* |
| Campylobacter | *ND* |
| Shiga-Toxin | *ND* |
| Yersinia | *ND* |
| Staphylococcus | *ND* |
| Listeria | *ND* |

**ppm:** parts per million, **ND:** not detected, **LOD:** limit of detection, **LOQ:** limit of quantitation

## QUALITY CONTROL OF ANALYSIS

| | |
|---|---|
| **Certificate No.** | 0404 CHP-FY24-WBC-008 |
| **Firm name:** | Bee Delightful |
| **Product name:** | Buzzed Bees Hemp Delta 9 Honey. Raw Honey and 360mg TCH |
| **Product batch No.** | NA |
| **Laboratory reference:** | HEMP Folder 001 |

| Tests | QC levels | QC Specified Amount (ppm) | QC Experimental Amount (ppm) | QC Accuracy (%Difference) |
|---|---|---|---|---|
| *Metals* | | | | |
| Arsenic | QC | 10.0 | *9.68 ± 0.03* | *-3.0* |
| Cadmium | QC | 10.0 | *9.50 ± 0.01* | *-5.0* |
| Lead | QC | 10.0 | *9.63 ± 0.03* | *-4.0* |
| Mercury | QC | 0.2 | *0.203 ± 0.006* | *1.5* |
| *Pesticides* | | | | |
| Acetamiprid | QC1 | 0.188 | *0.17 ± 0.01* | *-10.5* |
| | QC2 | 0.375 | *0.34 ± 0.02* | *-8.7* |
| | QC3 | 0.750 | *0.70 ± 0.02* | *-6.4* |
| Aldicarb | QC1 | 0.094 | *0.12 ± 0.02* | *1.8* |
| | QC2 | 0.188 | *0.21 ± 0.02* | *6.9* |
| | QC3 | 0.750 | *0.67 ± 0.09* | *-11.1* |
| Azoxystrobin | QC1 | 0.094 | *0.093 ± 0.007* | *-0.4* |
| | QC2 | 0.188 | *0.176 ± 0.009* | *-6.2* |
| | QC3 | 0.375 | *0.36 ± 0.03* | *-4.8* |
| Bifenazate | QC1 | 0.094 | *0.088 ± 0.004* | *-6.6* |
| | QC2 | 0.188 | *0.181 ± 0.005* | *-3.7* |
| | QC3 | 0.375 | *0.35 ± 0.03* | *-5.7* |
| Boscalid | QC1 | 0.094 | *0.096 ± 0.002* | *2.1* |
| | QC2 | 0.375 | *0.35 ± 0.03* | *-7.8* |
| | QC3 | 0.750 | *0.78 ± 0.05* | *3.7* |
| Carbaryl | QC1 | 0.094 | *0.09 ± 0.01* | *-5.0* |
| | QC2 | 0.350 | *0.35 ± 0.03* | *-6.7* |
| | QC3 | 0.750 | *0.70 ± 0.04* | *-6.4* |
| Carbofuran | QC1 | 0.094 | *0.099 ± 0.009* | *5.9* |
| | QC2 | 0.188 | *0.182 ± 0.002* | *-3.2* |
| | QC3 | 0.375 | *0.36 ± 0.02* | *-4.2* |
| Chlorantraniliprole | QC1 | 0.094 | *0.097 ± 0.002* | *3.9* |
| | QC2 | 0.188 | *0.18 ± 0.01* | *-6.7* |
| | QC3 | 0.375 | *0.37 ± 0.02* | *-1.2* |
| Chlorpyrifos | QC1 | 0.188 | *0.186 ± 0.009* | *-0.9* |
| | QC2 | 0.375 | *0.37 ± 0.03* | *-2.7* |
| | QC3 | 0.750 | *0.71 ± 0.02* | *-4.9* |
| Cypermethrin | QC1 | 0.750 | *0.79 ± 0.04* | *5.5* |
| | QC2 | 1.500 | *1.6 ± 0.1* | *4.5* |
| | QC3 | 3.000 | *3.2 ± 0.1* | *6.6* |
| Diazinon | QC1 | 0.094 | *0.087 ± 0.003* | *-6.7* |
| | QC2 | 0.375 | *0.37 ± 0.02* | *-2.2* |
| | QC3 | 0.750 | *0.74 ± 0.06* | *-0.9* |
| Dichlorvos | QC1 | 0.188 | *0.177 ± 0.009* | *-5.5* |
| | QC2 | 0.375 | *0.407 ± 0.002* | *8.4* |
| | QC3 | 0.750 | *0.73 ± 0.01* | *-3.3* |
| Ethoprophos | QC1 | 0.188 | *0.17 ± 0.01* | *-7.0* |
| | QC2 | 0.375 | *0.38 ± 0.04* | *2.2* |
| | QC3 | 0.750 | *0.76 ± 0.07* | *1.8* |
| Etofenprox | QC1 | 0.094 | *0.097 ± 0.001* | *5.1* |
| | QC2 | 0.188 | *0.186 ± 0.001* | *-2.1* |
| | QC3 | 0.375 | *0.401 ± 0.007* | *7.0* |
| Fipronil | QC1 | 0.094 | *0.084 ± 0.006* | *-10.8* |
| | QC2 | 0.188 | *0.18 ± 0.03* | *-4.1* |
| | QC3 | 0.375 | *0.87 ± 0.08* | *-6.1* |
| Flonicamid | QC1 | 0.094 | *0.10 ± 0.01* | *6.7* |

| | | | | |
|---|---|---|---|---|
| | QC2 | 0.188 | *0.19 ± 0.01* | *1.3* |
| | QC3 | 0.375 | *0.40 ± 0.04* | *7.6* |
| Imidacloprid | QC1 | 0.188 | *0.17 ± 0.04* | *-8.0* |
| | QC2 | 0.375 | *0.39 ± 0.02* | *5.1* |
| | QC3 | 0.750 | *0.80 ± 0.04* | *6.0* |
| Metalaxyl | QC1 | 0.188 | *0.208 ± 0.004* | *10.7* |
| | QC2 | 0.375 | *0.39 ± 0.04* | *4.2* |
| | QC3 | 0.750 | *0.73 ± 0.05* | *-3.1* |
| Methiocarb | QC1 | 0.094 | *0.098 ± 0.007* | *4.4* |
| | QC2 | 0.188 | *0.18 ± 0.01* | *-4.6* |
| | QC3 | 0.375 | *0.412 ± 0.002* | *9.8* |
| Methomyl | QC1 | 0.094 | *0.090 ± 0.01* | *-4.9* |
| | QC2 | 0.375 | *0.38 ± 0.04* | *2.5* |
| | QC3 | 0.750 | *0.75 ± 0.03* | *0.2* |
| Methyl parathion | QC1 | 0.188 | *0.185 ± 0.009* | *-1.2* |
| | QC2 | 0.350 | *0.34 ± 0.02* | *-10.2* |
| | QC3 | 0.750 | *0.78 ± 0.02* | *4.2* |
| Myclobutanil | QC1 | 0.188 | *0.184 ± 0.006* | *-2.1* |
| | QC2 | 0.375 | *0.36 ± 0.03* | *-3.1* |
| | QC3 | 0.750 | *0.82 ± 0.02* | *9.5* |
| Oxamyl | QC1 | 0.188 | *0.087 ± 0.002* | *3.6* |
| | QC2 | 0.375 | *0.40 ± 0.04* | *6.1* |
| | QC3 | 0.750 | *0.78 ± 0.09* | *3.4* |
| Permethrin | QC1 | 0.188 | *0.19 ± 0.03* | *0.9* |
| | QC2 | 0.375 | *0.42 ± 0.08* | *9.2* |
| | QC3 | 0.750 | *0.80 ± 0.07* | *6.4* |
| Pyridaben | QC1 | 0.188 | *0.160 ± 0.004* | *-14.9* |
| | QC2 | 0.375 | *0.36 ± 0.02* | *-3.8* |
| | QC3 | 0.750 | *0.75 ± 0.06* | *-0.6* |
| Spiroxamine | QC1 | 0.094 | *0.093 ± 0.006* | *-0.9* |
| | QC2 | 0.188 | *0.174 ± 0.008* | *-7.4* |
| | QC3 | 0.375 | *0.37 ± 0.02* | *-1.3* |
| Tebuconazole | QC1 | 0.188 | *0.17 ± 0.002* | *5.8* |
| | QC2 | 0.375 | *0.18 ± 0.01* | *-2.5* |
| | QC3 | 0.750 | *0.40 ± 0.01* | *6.0* |
| Thiacloprid | QC1 | 0.094 | *0.098 ± 0.007* | *4.7* |
| | QC2 | 0.188 | *0.18 ± 0.02* | *-3.7* |
| | QC3 | 0.750 | *0.75 ± 0.01* | *-0.1* |
| Thiamethoxam | QC1 | 0.094 | *0.089 ± 0.001* | *-5.0* |
| | QC2 | 0.375 | *0.38 ± 0.02* | *2.1* |
| | QC3 | 0.750 | *0.80 ± 0.07* | *6.3* |

### Cannabinoids

| | | | | |
|---|---|---|---|---|
| **(−)-*trans*-Δ⁹-tetrahydrocannabinol (THC)** | QC1 | 0.313 | *0.296 ± 0.002* | *-2.8* |
| | QC2 | 0.625 | *0.67 ± 0.03* | *7.9* |
| | QC3 | 1.250 | *1.26 ± 0.08* | *0.8* |

### Microbiological

| ***Positive Controls*** | *ATCC 14028 Salmonella* | *ATCC 25922 E. coli* | *ATCC 43470 Campylobacter* | *ATCC 43470 Shiga-Toxin (E. coli Serotype O157:H7)* | *ATCC 49397 Yersinia* | *ATCC 29213 Staphylococcus* | *Scott A Listeria* |
|---|---|---|---|---|---|---|---|
| Total combined yeast molds counts | *NA* | *NA* | *NA* | *NA* | *NA* | *NA* | *NA* |
| Salmonella | *+* | *NA* | *NA* | *NA* | *NA* | *NA* | *NA* |
| E. coli | *NA* | *+* | *NA* | *NA* | *NA* | *NA* | *NA* |
| Campylobacter | *NA* | *NA* | *+* | *NA* | *NA* | *NA* | *NA* |
| Shiga-Toxin | *NA* | *NA* | *NA* | *+* | *NA* | *NA* | *NA* |
| Yersinia | *NA* | *NA* | *NA* | *NA* | *+* | *NA* | *NA* |
| Staphylococcus | *NA* | *NA* | *NA* | *NA* | *NA* | *+* | *NA* |
| Listeria | *NA* | *NA* | *NA* | *NA* | *NA* | *NA* | *+* |

**NA:** not applicable**, +:** growth, **-:** no growth, **ppm:** parts per million, **ND:** not detected

06/26/2024
DATE OF RELEASE

*Yehia Mechref*
LABORATORY MANAGER

**Texas Tech University**
**Department of Chemistry and Biochemistry**
**Dr. Mechref Research Laboratory**
**Lubbock, TX 79409-1061**
**Tel. 806-834-8246**
**Fax. 806-742-1289**



## CERTIFICATE OF ANALYSIS

| | |
|---|---|
| **Certificate No.** | 0405 CHP-FY24-WBC-009 |
| **Received date:** | 06/06/2024 |
| **Report date:** | 06/26/2024 |
| **Firm name:** | The Hemp Collect |
| **Product name:** | The Happy Cactus Apothecary Gummies |
| **Product batch No.** | 3016MC_2475 |
| **Laboratory reference:** | HEMP Folder 001 |
| **Chemicals above limit:** | None |

| Tests | Acceptable limit | Results |
|---|---|---|
| *Cannabinoids* | | |
| (−)-*trans*-Δ⁹-tetrahydrocannabinol (THC) | 0.3% | *0.00002 ± 0.00001% (0.20 ± 0.01 ppm)* *(LOD: 0.0004 ppm; LOQ: 0.04 ppm)* |

**ppm:** parts per million, **ND:** not detected, **LOD:** limit of detection, **LOQ:** limit of quantitation

## QUALITY CONTROL OF ANALYSIS

| | |
|---|---|
| **Certificate No.** | 0405 CHP-FY24-WBC-009 |
| **Firm name:** | The Hemp Collect |
| **Product name:** | The Happy Cactus Apothecary Gummies |
| **Product batch No.** | 3016MC_2475 |
| **Laboratory reference:** | HEMP Folder 001 |

| Tests | QC levels | QC Specified Amount (ppm) | QC Experimental Amount (ppm) | QC Accuracy (%Difference) |
|---|---|---|---|---|
| **Cannabinoids** | | | | |
| (−)-*trans*-Δ⁹-tetrahydrocannabinol (THC) | QC1 | 0.313 | *0.296 ± 0.002* | *-5.3* |
| | QC2 | 0.625 | *0.641 ± 0.005* | *7.9* |
| | QC3 | 1.250 | *1.26 ± 0.08* | *0.8* |

**ppm:** parts per million, **ND:** not detected

06/26/2024
DATE OF RELEASE

*Yahia Mechref*
LABORATORY MANAGER

# PLAINTIFF EXHIBIT

# D2-E



**From:** Joel Thompson <Joel@thehempcollect.com>
**Date:** July 30, 2026 at 12:12:51 PM CDT
**To:** Todd Harris <toddharris@thehappycactusatx.com>, asteel@bankslawfirm.com
**Subject: Fwd: We've Confirmed Your Package Was Delivered.**

UPS won't go back far enough to get tracking data but do have confirmation of delivery, shipped form Oregon to TX and can assume multiple states along the way shipped ground

Best,



**JOEL THOMPSON**

**Co-Founder / COO**

**M:** **SCHEDULE A CALL**
**W:** THEHEMPCOLLECT.COM
**P:** +1 951.830.0003

---------- Forwarded message ---------
From: **William Cannon** <will@thehempcollect.com>
Date: Thu, Jul 30, 2026 at 1:10 PM
Subject: Fwd: We've Confirmed Your Package Was Delivered.
To: Joel Thompson <joel@thehempcollect.com>, Patrick Adams <patrick@thehempcollect.com>



Hi William (Will) Cannon,

# Here's your proof of delivery.

1 package was delivered.

# Wednesday June 18, 2025
# 10:52 AM

### Inquiry By
MAC JONES
HEMP COLLECT

### Delivery Details
Left at: OFFICE
Confirmed By: NATASHA

**Shipped To**

MICKY HARRIS
3414 E 7TH ST
AUSTIN, TX 78702
US

**Shipper Account**

HF5221

**Tracking Number**

1ZHF5221A409732047

©2026 United Parcel Service of America, Inc. UPS, the UPS brandmark, and the color brown are trademarks of United Parcel Service of America, Inc. All rights reserved.

Please do not reply to this email.

Privacy Notice | Service Terms | Help & Support

# PLAINTIFF EXHIBIT

# D2-F

**TEXAS NEWS**

# Central Texas hemp retailers race to comply as THC restrictions take effect on July 31

The new rules will ban many THC products, including delta-8.

Author: **Jose Alonzo**
Published: **10:09 PM CDT July 20, 2026**
Updated: **10:09 PM CDT July 20, 2026**

AUSTIN, Texas — Hemp retailers across Texas are preparing for another major shift in state regulations as new restrictions on certain THC products take effect at the end of July.

Following a lengthy legal battle, the Texas Department of State Health Services (DSHS) will begin enforcing new rules on July 31 that classify more than trace amounts of THC other than delta-9 THC as controlled substances. The change means many products currently sold in hemp stores will no longer be legal to offer in Texas.



For business owners like Todd Harris, owner of The Happy Cactus in Austin, the latest regulatory change is another challenge in an industry that has faced years of uncertainty.

"This last year has just been regulatory whiplash," Harris said.

Harris said his business has built much of its inventory around hemp-derived THC products, including delta-8 gummies made under his store's private label. He said those products will soon have to come off the shelves.

"These are our house brand gummies. This is our delta-8 THC gummies," Harris said. "The state is deciding that they think this is an illegal product now."

## What is changing?

KVUE reached out to the DSHS about the new restrictions. In a statement, the department said:



"Effective July 31, 2026, more than trace amounts of any THC other than delta-9 are considered controlled substances. These products are subject to detention/embargo and referral to law enforcement. This will occur at the time of our inspections (routine, compliance, or complaint investigations).

As a reminder, consumable hemp products cannot contain more than 0.3 percent concentration of Delta-9 tetrahydrocannabinol (THC). Only trace amounts of delta-8 THC naturally produced by the hemp *Cannabis sativa L.* plant(s) from which *a consumable hemp* product was manufactured are permissible."

The DSHS said products found to be out of compliance during inspections could be detained and referred to law enforcement.

## Hemp businesses say inventory is shrinking

Harris, who is also a member of the Texas Hemp Business Council, said the latest restrictions continue to narrow the types of products hemp retailers can legally sell.

"They came after THCA, which is 60% of the industry, and now they're coming after delta-8, which is another 10% to 20%," he said. "They're really leaving the industry with 20% to 30% of products that we started with back in 2019 when Texas adopted the federal farm bill."

Close Ad

He said the ongoing regulatory changes have forced his business to reduce staff and rethink its product offerings.

## Customers affected by the changes

Harris said many of his customers rely on hemp-derived THC products and are now searching for alternatives before the July 31 deadline.

He described one longtime customer, a retired teacher from Bastrop, who purchases delta-8 gummies every month.

"Now we are trying to help her figure out another product that can fill the gap because she will no longer have access to that," Harris said. "She has claimed with us that she is getting off many medications because of this product."



**Confusion remains**

Harris said his business has worked to comply with every regulatory change issued by the state.

KVUE also spoke with several customers outside hemp shops who declined to appear on camera. They said they wish the rules surrounding hemp products were less complicated and more consistent, saying it has become increasingly difficult to know which products remain legal each time they visit a store.

**Social Security Changes Coming in 2026 That Impact Everyone**

If you're a senior on social security and you don't take advantage of these benefits this month, you'll regret It big time

**HealthyWallet** | Sponsored

Learn More

**Cardiologists Say Blood Pressure Isn't Age: Just Stop Eating These 2 Foods**

**The Wellness Chronicle** | Sponsored

**Seniors Above 55 Years Of Age Can Now Fly Business Class For The Price of Economy**

**Smart Travel Tips** | Sponsored

Learn More

**Cardiologists Say Blood Pressure Isn't Age: Just Stop Drinking These 2 Beverages**

**Vital Living Journal** | Sponsored



**We've tested 27 popular teeth whitening products: Here are the 5 winners**

Consumer Reviews | Sponsored

**Here's What A Walk-In Shower Should Cost You In Rolesville**

West Shore Home | Sponsored

**Sleep Apnea is Linked to This Household Item (Stop Using It)**

derila-ergo-official.com | Sponsored

**Senator Mitch McConnell shares health update about recovery, new photo**

KVUE

**Cause of death revealed for 18-year-old 'Godzilla' actress Kaylee Hottle**

KVUE

**LOADING NEXT ARTICLE...**



# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### GALVESTON DIVISION

## DECLARATION OF THOMAS MONTI

**Declaration of Thomas Monti**

I, **Thomas Monti**, declare as follows:

## I. Background

1. My name is Thomas Scott Monti.

2. I am over the age of eighteen and competent to testify.

3. I make this declaration based upon my own personal knowledge.

4. I reside in League City, Texas.

## II. Personal Background

5. I have used hemp-derived cannabinoid products since approximately 2021. In particular, I use Delta-8 tetrahydrocannabinol (Delta-8 THC) gummies, drinks, and topical creams.

6. I purchase these products from licensed retailers and reputable manufacturers located in Texas, including from Burners Vape/Smoke/Herb in Bacliff, Texas.

7. I use these products for a variety of ailments, including pain management due to significant physical injuries from a previous motorcycle accident; injuries from my more than two-decade career as a law enforcement officer in Illinois (primarily in the tactical operations/SWAT unit); post-traumatic stress disorder (PTSD) related to that service; and insomnia.

1

8. I am a retail store manager at Burners Vape/Smoke/Herb, a veteran-owned, one-stop cannabis and vape shop in Bacliff, Texas.

9. I am authorized to speak on behalf of Burners Vape/Smoke/Herb in my capacity as retail store manager.

10. Burners Vape/Smoke/Herb offers a wide range of hemp products, including Delta-8 THC and other cannabinoid products, vape products, accessories, and edibles. A significant portion of the store's sales derives from Delta-8 THC products.

11. I was employed by the Illinois State Police from 1997 to 2020: Patrol District 11 (1997–1998); Crime Scene Investigator (1998–2000); Patrol District 11 (2000–2001); Special Weapons and Tactics/SWAT (2001–2017); Executive Protection Unit/EPU (2017–2019); Illinois State Police Academy Officer Survival Coordinator (2019–2020); Illinois State Police Academy Curriculum Review Board (2019–2020); and Illinois State Police Use of Force Committee Chair (2019–2020). I was employed by the Illinois State police in the listed roles and years.

12. I retired from active duty on 08/31/2020 in good standing from the Illinois State Police, with authorization to carry a sidearm.

## III. Reliance

13. Based on my experience as a retired law enforcement officer—including experience working in narcotics units and undercover assignments with the Drug Enforcement Administration—I am familiar with federal controlled substance laws. I have read federal and state laws, including the Agriculture Improvement Act of 2018. Based

2

on my training and experience, I believed that the hemp-derived products I purchased were lawful under current federal and Texas law. Before purchasing these products, I reviewed product labels and Certificates of Analysis where available.

14. I believed these Delta-8 THC products were lawfully sold in Texas.

15. I have relied on continued lawful access to personally consume and sell these Delta-8 THC products.

## IV. Effect of the Challenged Law

16. As a result of the challenged rescheduling and clarifications to the definitions of tetrahydrocannabinol and marijuana extract made in the 2021 Schedule of Controlled Substances, I believe I will no longer be able to lawfully obtain the Delta-8 THC products I currently use.

17. Additionally, my employer will no longer be able to sell Delta-8 THC products.

18. I have already:

(a) purchased Delta-8 THC products earlier than planned;

(b) been informed that Delta-8 THC products will no longer be sold;

(c) observed retailers removing products from shelves;

(d) experienced uncertainty regarding continued access; and

(e) fear violating Texas controlled substance law and facing civil or criminal penalties, including becoming a convicted felon, which would have significant collateral consequences.

## V. Personal Harm

19. If the challenged law takes effect, I expect to lose access to Delta-8 THC products that I currently use and sell.

20. I will either:

(a) lose access altogether;

(b) lose my employment because Delta-8 THC products are a primary source of revenue for Burners Vape/Smoke/Herb, which will have a significant financial impact on me and my family;

(c) if I am eligible for the Texas Compassionate Use Program (TCUP), will incur substantial additional expense and travel to purchase cannabinoid products from the nearest TCUP location, which is approximately one hour from my residence and approximately three times more expensive than the Delta-8 THC products that I currently use;

(d) in my personal experience, legal cannabinoid products offered by TCUP, including Delta-9 THC, are significantly more potent than Delta-8 THC and often have undesirable side effects;

(e) travel outside Texas to obtain products; or

(f) forgo Delta-8 THC products for my ailments and instead seek pharmaceutical alternatives through my medical provider, such as opioids for chronic pain—which are addictive—and/or propranolol, which has previously caused me undesirable side effects including erectile dysfunction and hair loss; other

4

prescribed medications for anxiety and/or depression have left me feeling numb and in a near-constant state of malaise.

21. These harms are immediate and ongoing.

## VI. Authentication

22. Attached as Exhibit D3-A is a true and correct copy of receipts reflecting my purchases of hemp-derived cannabinoid products April 2022 to July 2026.

23. Attached as Exhibits D3-B-D3-F are true and correct copies of photographs of the products that I purchased and possess.

24. Attached as **Exhibits D3-G-D3-I** are true and correct copies of photographs of the exterior and interior of Burners Vape/Smoke/Herb in Bacliff, Texas.

25. Attached as **Exhibits D3-J-D3-K** are true and correct copies of photographs of hemp products, including Delta-8 THC and other cannabinoid at Burners Vape/Smoke/Herb in Bacliff, Texas., which I obtained in connection with my purchase or use of these products.

26. Attached as **Exhibit D3-L** is a true and correct copy of a letter dated July 26, 2026 regarding the effects of the challenged rescheduling and clarifications to the definitions of tetrahydrocannabinol and marijuana extract made in the 2021 Schedule of Controlled Substances will have on operations and employees of Burners Vape/Smoke/Herb in Bacliff.

27. Attached as **Exhibit D3-M** is a true and correct copy of my resume.

28. Attached as Exhibit D3-N is a true and correct copy of my retired Illinois State Police identification.

5

29. Attached as Exhibit D3-O is a true and correct copy of a Certificate of Recognition awarded to me by the Illinois State Police for 23 years of outstanding contribution and service.

30. Attached as Exhibit D3-P is a true and correct copy of a letter from Illinois State Police Director to me for my dedicated service.

31. I personally obtained or received these documents, and they are true and correct copies of the originals or accurate electronic copies in my possession.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on July 30, 2026, in League City, Texas.

*Thomas Monti*

Thomas Monti

6

# PLAINTIFF EXHIBIT

# D3-A



BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

( FOLLOWING )

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

Effex Resin Series D10/THC-P/THC-O 2g
Disposable SFV OG                        $38.95

| | | |
|---|---|---|
| Subtotal | | $38.95 |
| Sales Tax | 8.25 % | $2.25 |
| Employee Discount | | -$11.69 |
| Order total | | $29.51 |

**Total paid**            $ **29** 51

April 09, 2022 6:58 pm
Payment ID: D4P5Z49T78HZY
Order ID: XC58C0D8R482W
Order Employee: Justin H.

**Payment**

| VISA | US DEBIT 7601 | $29.51 |
|---|---|---|
| | Order amount | $29.51 |
| | Cashier: Justin H. | |

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

Burners Vape/Smoke/Herb

( FOLLOWING )

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

Effex Grimm's Green D8/THC-O/THC-P 2g
Disposable Galactic Double Bubble    $38.95

| | | |
|---|---|---|
| Subtotal | | $38.95 |
| Sales Tax | 8.25 % | $2.25 |
| Employee Discount | | -$11.69 |
| Order total | | $29.51 |

**Total paid**    $ **29** 51

April 25, 2022 12:20 pm
Payment ID: PV2YKW62BTACJ
Order ID: XRE0441E6CWEG
Order Employee: Tom M.

**Payment**

VISA    VISA 7601    $29.51
Order amount    $29.51
Cashier: Tom M.

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

Burners Vape/Smoke/Herb

( FOLLOWING )

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

Extrax 2500 Mg Lights Out Gummies Purple
Berry                                    $29.95

OPMS Silver White Vein Indo Capsules 480ct
$65.00

| Subtotal | | $94.95 |
|---|---|---|
| Sales Tax | 8.25 % | $1.73 |
| Employee Discount | | -$28.49 |
| Order total | | $68.19 |

**Total
paid**          $ **68** 19

May 20, 2022 10:18 pm
Payment ID: 6KQYS7EC5382P
Order ID: WZP1REK8NAF24
Order Employee: Tom M.

**Payment**

**VISA**   VISA 7601              $68.19
           Order amount          $68.19
           Cashier: Tom M.

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

( FOLLOWING )

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

Extrax Lights Out 2g Disposable Ekto Kooler
$41.95

| | | |
|---|---|---|
| Subtotal | | $41.95 |
| Sales Tax | 8.25 % | $2.42 |
| 30% Off | | -$12.59 |
| Order total | | $31.78 |

**Total paid**   $ **31** 78

June 06, 2022 3:32 pm
**Payment ID: HZMKSPG01CWCG**
**Order ID: GQJQ0D06PXPGW**
Order Employee: KENNETH B.

**Payment**

| | | |
|---|---|---|
| VISA | US DEBIT 7601 | $31.78 |
| | Order amount | $31.78 |
| | Cashier: KENNETH B. | |

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

Burners Vape/Smoke/Herb

( FOLLOWING )

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

| | |
|---|---|
| Dozo 2g 5 Blend Watermelon OG | $38.95 |
| Dozo 2g 5 Blend Amnesia | $38.95 |

| | | |
|---|---|---|
| Subtotal | | $77.90 |
| Sales Tax | 8.25 % | $4.50 |
| Employee Discount | | -$23.37 |
| Order total | | $59.03 |

**Total paid**    $ **59** 03

June 15, 2022 10:43 am
Payment ID: 4PVW67X6DBP6T
Order ID: CDM2JWJ6NH7ST
Order Employee: Tom M.

**Payment**

| VISA | VISA 7601 | $59.03 |
|---|---|---|
| | Order amount | $59.03 |
| | Cashier: Tom M. | |

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

( FOLLOWING )

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

Extrax 2500 Mg Lights Out Gummies Purple
Berry                                           $29.95

Subtotal                                        $29.95

Sales Tax                    8.25 %               $1.73
Employee Discount                               -$8.99
Order total                                     $22.69

## Total paid    $ 22 69

June 28, 2022 4:42 pm
**Payment ID: YJR3265KP0AKM**
**Order ID: WAEHCHN8HNSTA**
Order Employee: Tom M.

**Payment**

**VISA**   VISA 7601                             $22.69
           Order amount                          $22.69
           Cashier: Tom M.

           Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

( FOLLOWING )

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

J & I Old School Hemp Farm Loose D8
Flower - 4.0 gram @ $3.50/gram          $14.00

| | | |
|---|---|---|
| Subtotal | | $14.00 |
| Sales Tax | 8.25 % | $0.81 |
| Employee Discount | | -$4.20 |
| Order total | | $10.61 |

**Total paid**          $ 10 61

July 01, 2022 3:30 pm
Payment ID: XG4JWD4J40RS2
Order ID: DK3B26C30AW2C
Order Employee: Tom M.

**Payment**

**VISA**   VISA 7601                  $10.61
          Order amount               $10.61
          Cashier: Tom M.

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

( FOLLOWING )

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

| | |
|---|---|
| Dutch Honey Fusion Golden x 2 | $1.98 |
| Blvd 3000 Puff Strawberry Banana | $16.95 |
| J & I Old School Hemp Farm Loose D8 Flower - 8.0 gram @ $3.50/gram | $28.00 |

| | | |
|---|---|---|
| Subtotal | | $46.93 |
| Sales Tax | 8.25 % | $2.71 |
| Employee Discount | | -$14.08 |
| Order total | | $35.56 |

**Total paid**   $ **35** 56

July 02, 2022 9:18 pm
**Payment ID: 2YZRKM1R534QR**
**Order ID: JWMFNEXBNR0PA**
Order Employee: KENNETH B.

**Payment**

| | | |
|---|---|---|
| **VISA** | VISA 7601 | $35.56 |
| | Order amount | $35.56 |
| | Cashier: KENNETH B. | |

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

Burners Vape/Smoke/Herb

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

HiXotic 2gram Live Resin THC-O/THC-
P/D10/HHC Disposable Russelwreck

$37.95

| Subtotal | | $37.95 |
|---|---|---|
| Sales Tax | 8.25 % | $2.19 |
| Employee Discount | | -$11.39 |
| Order total | | $28.75 |

## Total paid

$ 28 75

July 14, 2022 9:12 pm
Payment ID: BC8ABFC9H0VKM
Order ID: EWAVABK4PT032
Order Employee: Tom M.

### Payment

**VISA**   VISA 7601          $28.75
Order amount   $28.75
Cashier: Tom M.

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

( FOLLOWING )

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

| | |
|---|---|
| Zombi Sleep Walker Blend 2500mg THC-P/THC-H/D11/D8 Live Resin Gummies Toxic Cherry | $35.95 |

| | | |
|---|---|---|
| Subtotal | | $35.95 |
| Sales Tax | 8.25 % | $2.08 |
| Employee Discount | | -$10.79 |
| Order total | | $27.24 |

## Total paid

$ **27** 24

August 02, 2022 3:09 pm
**Payment ID: J4YRMVHAVSC6T**
**Order ID: 9F8SQ67CEBP4T**
Order Employee: Tom M.

**Payment**

| VISA | VISA 7601 | $27.24 |
|---|---|---|
| | Order amount | $27.24 |
| | Cashier: Tom M. | |

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

Zombi Sleep Walker Blend 2500mg THC-
P/THC-H/D11/D8 Live Resin Gummies Toxic
Cherry                                    $35.95

| | |
|---|---|
| Subtotal | $35.95 |

| | | |
|---|---|---|
| Sales Tax | 8.25 % | $2.08 |
| Employee Discount | | -$10.79 |
| Order total | | $27.24 |

# Total paid          $ 27 24

August 23, 2022 8:24 pm
Payment ID: VRMDAFK3EXT24
Order ID: 5P2JA9KXVVQ1M
Order Employee: Tom M.

## Payment

| VISA | VISA 7601 | $27.24 |
|---|---|---|
| | Order amount | $27.24 |
| | Cashier: Tom M. | |

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

HiXotic 2gram Live Resin THC-O/THC-
P/D10/HHC Disposable Alaskan Thunder
F##k                                   $37.95

| | |
|---|---|
| Subtotal | $37.95 |

| | | |
|---|---|---|
| Sales Tax | 8.25 % | $2.19 |
| Employee Discount | | -$11.39 |
| Order total | | $28.75 |

**Total
paid**           $ **28** 75

August 24, 2022 6:24 pm
**Payment ID: VCGKMV9Z80DGR**
**Order ID: QRH0T2HDTWEYE**
Order Employee: Tom M.

**Payment**

| | | |
|---|---|---|
| VISA | VISA 7601 | $28.75 |
| | Order amount | $28.75 |
| | Cashier: Tom M. | |

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

| | |
|---|---|
| Raw 1 1/4 Classic Cones | $2.50 |
| J & I Old School Hemp Farm Loose D8 Flower - 4.0 gram @ $3.50/gram | $14.00 |
| HHC Flower - 2.0 grams @ $6.50/grams | $13.00 |

| | | |
|---|---|---|
| Subtotal | | $29.50 |
| Sales Tax | 8.25 % | $1.70 |
| Employee Discount | | -$8.85 |
| Order total | | $22.35 |

## Total paid

## $ 22 35

October 11, 2022 5:10 pm
**Payment ID: 7Z6NMEV35MZTJ**
**Order ID: 43DMY1YFB7B30**
Order Employee: Tom M.

**Payment**

| VISA | VISA 7601 Order amount Cashier: Tom M. | $22.35 $22.35 |
|---|---|---|

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

Torch Haymaker Gummies 3500mg Cherry
Bomb                                    $38.75

| | | |
|---|---|---|
| Subtotal | | $38.75 |
| Sales Tax | 8.25 % | $2.24 |
| Employee Discount | | -$11.63 |
| Order total | | $29.36 |

## Total paid        $ 29 36

October 11, 2022 5:13 pm
Payment ID: H64KWZKETGPV6
Order ID: 1QTE7PKGB348J
Order Employee: Tom M.

## Payment

| | | |
|---|---|---|
| **VISA** | VISA 7601 | $29.36 |
| | Order amount | $29.36 |
| | Cashier: Tom M. | |

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

Torch Haymaker Gummies 3500mg Cherry
Bomb                                    $38.75

| | | |
|---|---|---|
| Subtotal | | $38.75 |
| Sales Tax | 8.25 % | $2.24 |
| Employee Discount | | -$11.63 |
| Order total | | $29.36 |

**Total paid**            $ **29** 36

October 31, 2022 2:40 pm
Payment ID: V7PWATWXGTTJ6
Order ID: SJWESSR1CWTD0
Order Employee: KENNETH B.

**Payment**

| VISA | US DEBIT 7601 | $29.36 |
|---|---|---|
| | Order amount | $29.36 |
| | Cashier: KENNETH B. | |

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

Burners Vape/Smoke/Herb

( FOLLOW )

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

Zombi Sleep Walker Blend 2500mg THC-
P/THC-H/D11/D8 Live Resin Gummies Toxic
Cherry                                    $35.95



| Subtotal | | $35.95 |
|---|---|---|
| Sales Tax | 8.25 % | $2.08 |
| Employee Discount | | -$10.79 |
| Order total | | $27.24 |

**Total paid**          $ **27** 24

November 19, 2022 9:57 pm
**Payment ID: NKE8A46JJMNTG**
**Order ID: 9A8GM9M5MBMN2**
Order Employee: Tom M.

**Payment**

| VISA | VISA 7601 | $27.24 |
|---|---|---|
| | Order amount | $27.24 |
| | Cashier: Tom M. | |

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

( FOLLOW )

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

DopeBomb 200mg Full Spectrum D9 10ct
Grape Watermelon                    $14.95

DopeBomb 200mg Full Spectrum D9 10ct
Strawberry/Blue Raspberry           $14.95

| Subtotal | | $29.90 |
|---|---|---|
| Sales Tax | 8.25 % | $1.73 |
| Employee Discount | | -$8.97 |
| Order total | | $22.66 |

**Total paid**            **$ 22 66**

December 06, 2022 3:57 pm
Payment ID: CM77VZNJQQE4R
Order ID: JA5Y85JE0BXNC
Order Employee: Tom M.

**Payment**

**VISA**  VISA 7601                     $22.66
         Order amount                  $22.66
         Cashier: Tom M.

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

( FOLLOW )

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

Zombi Sleep Walker Blend 2500mg THC-
P/THC-H/D11/D8 Live Resin Gummies Toxic
Cherry                                  $35.95

| | | |
|---|---|---|
| Subtotal | | $35.95 |
| Sales Tax | 8.25 % | $2.08 |
| Employee Discount | | -$10.79 |
| Order total | | $27.24 |

**Total paid**      $ **27** 24

December 10, 2022 1:32 pm
**Payment ID: RCSFVYP6K8SN0**
**Order ID: TA1B1V10QDZKT**
Order Employee: Tom M.

**Payment**

| | | |
|---|---|---|
| **VISA** | VISA 7601 | $27.24 |
| | Order amount | $27.24 |
| | Cashier: Tom M. | |

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

Torch Haymaker Gummies 3500mg Cotton
Candy                                            $34.95

| | |
|---|---|
| Subtotal | $34.95 |

| | | |
|---|---|---|
| Sales Tax | 8.25 % | $2.02 |
| Employee Discount | | -$10.49 |
| Order total | | $26.48 |

**Total
paid**                    $ **26** 48

December 30, 2022 5:16 pm
**Payment ID: RYEDDHT2NFE26**
**Order ID: CXV87CB8691A8**
Order Employee: Tom M.

**Payment**

| | | |
|---|---|---|
| **VISA** | VISA 7601 | $26.48 |
| | Order amount | $26.48 |
| | Cashier: Tom M. | |

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

Burners Vape/Smoke/Herb

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

Extrax 3500 Mg Lights Out Gummies Purple
Berry                                    $29.95

DopeBomb 200mg Full Spectrum D9 10ct
Grape Watermelon                         $14.95

| | | |
|---|---|---|
| Subtotal | | $44.90 |
| Sales Tax | 8.25 % | $2.59 |
| Employee Discount | | -$13.47 |
| Order total | | $34.02 |

**Total
paid**              $ **34** 02

January 14, 2023 5:44 pm
Payment ID: **GW1NH58RHKGFW**
Order ID: **7MRFB9RCX9GMY**
Order Employee: Tom M.

**Payment**

VISA   VISA 7601                          $34.02
       Order amount                       $34.02
       Cashier: Tom M.

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

| | |
|---|---|
| Torch Haymaker Gummies 3500mg Cherry Bomb | $29.95 |

| | |
|---|---|
| Subtotal | $29.95 |

| | | |
|---|---|---|
| Sales Tax | 8.25 % | $1.73 |
| Employee Discount | | -$8.99 |
| Order total | | $22.69 |

## Total paid

## $ 22 69

February 04, 2023 8:39 pm
**Payment ID: YNSC9QNGZW6N2**
**Order ID: NRRQBEDAC17YA**
Order Employee: Tom M.

### Payment

| | | |
|---|---|---|
| **VISA** | VISA 7601 | $22.69 |
| | Order amount | $22.69 |
| | Cashier: Tom M. | |

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

Burners Vape/Smoke/Herb

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

Chapo Live Resin Gummies 3500mg Super
Blue (Indica)                                    $29.99

HiXotic 2gram Live Resin THC-O/THC-
P/D10/HHC Disposable Alaskan Thunder
F##k                                             $34.95

| Subtotal | | $64.94 |
|---|---|---|
| Sales Tax | 8.25 % | $3.75 |
| Employee Discount | | -$19.48 |
| Order total | | $49.21 |

**Total paid**　　$ **49** 21

February 22, 2023 6:17 pm
Payment ID: WJ49S5EHVDV6C
Order ID: R3M2ZMK377YEW
Order Employee: Tom M.

**Payment**

VISA　VISA 7601　　　　　$49.21
　　　Order amount　　　$49.21
　　　Cashier: Tom M.

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

| | |
|---|---|
| Chapo Live Resin Gummies 3500mg Super Blue (Indica) | $29.99 |

| | | |
|---|---|---|
| Subtotal | | $29.99 |
| Sales Tax | 8.25 % | $1.73 |
| Employee Discount | | -$9.00 |
| Order total | | $22.72 |

**Total paid**  $ **22** 72

March 08, 2023 6:25 pm
Payment ID: ZYEARDZ4Y36PC
Order ID: PNA3XCCJ084D6
Order Employee: Tom M.

**Payment**

| | | |
|---|---|---|
| VISA | VISA 7601 | $22.72 |
| | Order amount | $22.72 |
| | Cashier: Tom M. | |

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

Torch Haymaker Gummies 3500mg Sour
Punch                                     $29.95

---

Subtotal                                  $29.95

Sales Tax            8.25 %               $1.73
Employee Discount                        -$8.99

Order total                               $22.69

# Total
# paid                  $ 22 69

March 28, 2023 2:14 pm
**Payment ID: BX1X1NV7VPHF0**
**Order ID: NQJ9JVFP8VRPW**
Order Employee: Tom M.

**Payment**

**VISA**   VISA 7601                    $22.69
           Order amount                 $22.69
           Cashier: Tom M.

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

Extrax 3500 Mg Lights Out Gummies Purple
Berry $29.95

| | |
|---|---|
| Subtotal | $29.95 |

| | | |
|---|---|---|
| Sales Tax | 8.25 % | $1.73 |
| Employee Discount | | -$8.99 |
| Order total | | $22.69 |

## Total paid       $ 22 69

April 18, 2023 6:16 pm
Payment ID: MWD6JVW3TM200
Order ID: MS09A8D32XHG6
Order Employee: Tom M.

### Payment

| | | |
|---|---|---|
| **VISA** | VISA 7601 | $22.69 |
| | Order amount | $22.69 |
| | Cashier: Tom M. | |

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

Extrax THC-A/Delta 9P 4.5 Gram Disposable
Thors Hammer                          $46.95

Subtotal                              $46.95

| Sales Tax | 8.25 % | $2.71 |
| Employee Discount | | -$14.09 |

Order total                           $35.57

## Total paid          $ 35 57

May 13, 2023 9:08 pm
Payment ID: 4GFJR9363MJGG
Order ID: Z5RMHB03NG8G8
Order Employee: Tom M.

### Payment

| **VISA** | VISA 7601 | $35.57 |
| | Order amount | $35.57 |
| | Cashier: Tom M. | |

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

DopeBomb 200mg Full Spectrum D9 10ct
Strawberry/Blue Raspberry          $14.95

Torch Haymaker Gummies 3500mg Cherry
Bomb                               $29.95

| Subtotal | | $44.90 |
|---|---|---|
| Sales Tax | 8.25 % | $2.59 |
| Employee Discount | | -$13.47 |
| Order total | | $34.02 |

**Total paid**          $ **34** 02

May 20, 2023 11:45 am
Payment ID: DPW5VCMJ3NY5M
Order ID: NDHM2A7Z2BDMP
Order Employee: Tom M.

**Payment**

VISA    VISA 7601                $34.02
        Order amount             $34.02
        Cashier: Tom M.

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

Burners Vape/Smoke/Herb

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

J & I Old School Hemp Farm Loose D8
Flower - 3.5 gram @ $3.50/gram          $12.25

| | | |
|---|---|---|
| Subtotal | | $12.25 |
| Sales Tax | 8.25 % | $0.71 |
| Employee Discount | | -$3.68 |
| Order total | | $9.28 |

**Total paid**          $ **9** 28

June 10, 2023 11:03 am
Payment ID: 7NPVFK65Y041C
Order ID: YZJ0FWW0DTNDY
Order Employee: Tom M.

Payment

**VISA**   VISA 7601          $9.28
           Order amount          $9.28
           Cashier: Tom M.

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

Torch Haymaker Gummies 3500mg Cherry
Bomb                                        $29.95

| | | |
|---|---|---|
| Subtotal | | $29.95 |
| Sales Tax | 8.25 % | $1.73 |
| Employee Discount | | -$8.99 |
| Order total | | $22.69 |

**Total
paid**          $ **22** 69

June 18, 2023 1:20 pm
Payment ID: NGATQMP0202JW
Order ID: C96QY16GJ5GAT
Order Employee: Brendan F.

**Payment**

**VISA**    VISA 7601                $22.69
         Order amount             $22.69
         Cashier: Brendan F.

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

Burners Vape/Smoke/Herb

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

HiXotic 2gram Live Resin THC-O/THC-
P/D10/HHC Disposable Russelwreck

$34.95

| | | |
|---|---|---|
| Subtotal | | $34.95 |
| Sales Tax | 8.25 % | $2.02 |
| Employee Discount | | -$10.49 |
| Order total | | $26.48 |

**Total paid**       $ 26 48

July 02, 2023 12:33 pm
**Payment ID: B53KHNY7V6DR8**
**Order ID: 1ZM9SDHZ1WYZG**
Order Employee: Brendan F.

**Payment**

| VISA | VISA 7601 | $26.48 |
|---|---|---|
| | Order amount | $26.48 |
| | Cashier: Brendan F. | |

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

Burners Vape/Smoke/Herb

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

| | | |
|---|---|---|
| Exodus Loud Resin Gummies 7500mg Sour Berry | | $38.95 |
| Subtotal | | $38.95 |
| Sales Tax | 8.25 % | $2.25 |
| Employee Discount | | -$11.69 |
| Order total | | $29.51 |

## Total paid

$ **29** 51

July 08, 2023 10:03 am
Payment ID: SNED4Z4NHQHFA
Order ID: 57NQRYSWW0YWR
Order Employee: Tom M.

### Payment

| | | |
|---|---|---|
| **VISA** | VISA 7601 | $29.51 |
| | Order amount | $29.51 |
| | Cashier: Tom M. | |

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

Torch Nitro Blend XXL 7000mg Gummies
Sour Lemon Cherry                                         $38.95

| | | |
|---|---|---|
| Subtotal | | $38.95 |
| Sales Tax | 8.25 % | $2.25 |
| Employee Discount | | -$11.69 |
| Order total | | $29.51 |

**Total paid**        $ **29** 51

August 15, 2023 11:48 am
Payment ID: XF5SDTK9Q13TR
Order ID: RFN93MW03W11M
Order Employee: Tom M.

**Payment**

**VISA**    VISA 7601                          $29.51
           Order amount                     $29.51
           Cashier: Tom M.

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

Trinity Hemp Beast 5 Gram Disposable
Blueberry OG
$43.95

| Subtotal | | $43.95 |
|---|---|---|
| Sales Tax | 8.25 % | $2.54 |
| Employee Discount | | -$13.19 |
| Order total | | $33.30 |

## Total paid    $ **33** 30

August 22, 2023 7:40 pm
Payment ID: WDAYARSG07J58
Order ID: CQ9GT7K3RTEY2
Order Employee: Tom M.

Payment

| VISA | VISA 7601 | $33.30 |
|---|---|---|
| | Order amount | $33.30 |
| | Cashier: Tom M. | |

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

| | |
|---|---|
| Dozo D9 Smashers 10,000mg Gummies Indica Sour Apple 20ct | $38.95 |

| | | |
|---|---|---|
| Subtotal | | $38.95 |
| Sales Tax | 8.25 % | $2.25 |
| Employee Discount | | -$11.69 |
| Order total | | $29.51 |

## Total paid　　$ 29 51

September 24, 2023 5:05 pm
Payment ID: YAD8V72W1K7XE
Order ID: RHY3XFY0MT162
Order Employee: Tom M.

### Payment

| | | |
|---|---|---|
| VISA | VISA 7601 Order amount Cashier: Tom M. | $29.51 $29.51 |

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

Torch Nitro Blend XXL 7000mg Gummies
Pina Colada                                    $38.95

HiXotic Live Resin HHC/HHC-P 2 Gram
Disposable Berry White Widow          $29.95

Subtotal                                       $68.90

Sales Tax                  8.25 %            $3.98
Employee Discount                         -$20.67

Order total                                   $52.21

**Total
paid**          $ **52** 21

October 22, 2023 10:56 am
Payment ID: 52X7T35NX2CHT
Order ID: 8W47G9G9MHS98
Order Employee: Tom M.

**Payment**

VISA    VISA 7601                        $52.21
        Order amount                     $52.21
        Cashier: Tom M.

        Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

| Extrax Adios Blend Gummies 7000mg 20ct Straw Colada | $38.95 |
|---|---|
| Subtotal | $38.95 |

| Sales Tax | 8.25 % | $2.25 |
|---|---|---|
| Employee Discount | | -$11.69 |
| Order total | | $29.51 |

## Total paid         $ 29 51

December 01, 2023 12:26 pm
Payment ID: 432E8R0K8PF3G
Order ID: P4TWX9R1S2HDE
Order Employee: Tom M.

### Payment

| **VISA** | VISA 7601 | $29.51 |
|---|---|---|
| | Order amount | $29.51 |
| | Cashier: Tom M. | |

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

Torch Nitro Blend XXL 7000mg Gummies
Sour Lemon Cherry                          $38.95

Employee Discount                        -$11.69

Subtotal                                      $27.26

Sales Tax                  8.25 %           $2.25

Order total                                   $29.51

## Total paid          $ 29 51

January 15, 2024 6:17 pm
Payment ID: THSNSBH44TBHY
Order ID: QT12WTVTYZNTR
Order Employee: Tom M.

**Payment**

**VISA**    VISA 7601                        $29.51
            Order amount                  $29.51
            Cashier: Tom M.

                Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

| | |
|---|---|
| AddAll x 2 | $14.00 |
| 3CHI D8 Gummies 200mg Watermelon | $18.50 |

| | | |
|---|---|---|
| Subtotal | | $32.50 |
| Sales Tax | 8.25 % | $1.88 |
| Employee Discount | | -$9.75 |
| Order total | | $24.63 |

## Total paid

$ **24** 63

January 28, 2024 4:01 pm
**Payment ID: TYYXNDK1789CP**
**Order ID: D42D8BF52QGR2**
Order Employee: Tom M.

**Payment**

| | | |
|---|---|---|
| **VISA** | VISA 7601 | $24.63 |
| | Order amount | $24.63 |
| | Cashier: Tom M. | |

Show Details

View the Privacy Policies for
Clover





BURNERS Vape/Smoke/Herb

*Burners Vape/Smoke/Herb*

( FOLLOW )

3003 EAST LEAGUE CITY PA
LEAGUE CITY, TX 77573
+1 832-905-6174

| | |
|---|---|
| FVKD Exotics 3.5 Gram THCA Sugar Disposable Mimosa | $34.95 |

| | | |
|---|---|---|
| Subtotal | | $34.95 |
| Sales Tax | 8.25 % | $2.88 |
| Order total | | $37.83 |

**Total paid**     $ **37** 83

October 31, 2024 2:26 pm
**Payment ID: SKQ4RPEFQX7Y2**
**Order ID: R21RY47403J3W**
Order Employee: Tom M.

**Payment**

| | | |
|---|---|---|
| **VISA** | VISA CREDIT 3875 | $37.83 |
| | Order amount | $37.83 |
| | Cashier: Tom M. | |

Show Details

View the Privacy Policies for
Clover





BURNERS VAPE SMOKE

4269 HWY 146 STE A
BACLIFF, TX 77518
+1 832-905-6174

Exodus Giga Bytes 500mg Ea. Assorted

$38.95

| Subtotal | | $38.95 |
|---|---|---|
| Sales Tax | 8.25 % | $2.25 |
| Employee Discount | | -$11.69 |
| Order total | | $29.51 |

## Total paid

$ 29 51

September 20, 2025 2:28 pm
Payment ID: 7MPFNX3AAVQW0
Order ID: 6HJDYADTTQ9G6
Order Employee: Tom

Payment

| VISA | US DEBIT 9682 | $29.51 |
|---|---|---|
| | Order amount | $29.51 |
| | Cashier: Tom | |

Show Details

View the Privacy Policies for
Clover





BURNERS VAPE SMOKE

4269 HWY 146 STE A
BACLIFF, TX 77518
+1 832-905-6174

Extra High THCA Exotic Flower - 3.5 gram @
$10.50/gram                                    $36.75

Exodus Giga Bytes 500mg Ea. Assorted
                                               $38.95

Extra High THCA Exotic Flower - 3.32 gram
@ $10.50/gram                                  $34.86

| | | |
|---|---|---|
| Subtotal | | $110.56 |
| Sales Tax | 8.25 % | $6.38 |
| Employee Discount | | -$33.17 |
| Order total | | $83.77 |

**Total paid**          $ **83** 77

November 02, 2025 12:54 pm
Payment ID: 5GS8QFNMX8BAJ
Order ID: VH2SM29JMRPJE
Order Employee: Kaylen

Payment

VISA   US DEBIT 9682                           $83.77
       Order amount                            $83.77
       Cashier: Kaylen

                Show Details

           View the Privacy Policies for
                    Clover





BURNERS VAPE SMOKE

4269 HWY 146 STE A
BACLIFF, TX 77518
+1 832-905-6174

| | |
|---|---|
| Foger Switch Pro Pod Strawberry Watermelon | $17.95 |
| Just CBD Ultra Relief Gel 1000mg CBD + 100mg THC With Menthol | $41.95 |

| | | |
|---|---|---|
| Subtotal | | $59.90 |
| Sales Tax | 8.25 % | $3.46 |
| Employee Discount | | -$17.97 |
| Order total | | $45.39 |

**Total paid**   $**45** 39

November 04, 2025 2:31 pm
Payment ID: 9QSKZT4E5DBHT
Order ID: JJGARBCCNWYAP
Order Employee: Tom

**Payment**

| VISA | US DEBIT 9682 | $45.39 |
|---|---|---|
| | Order amount | $45.39 |
| | Cashier: Tom | |

Show Details

View the Privacy Policies for
Clover





BURNERS VAPE SMOKE

4269 HWY 146 STE A
BACLIFF, TX 77518
+1 832-905-6174

Exodus Giga Bytes 500mg Ea. Assorted
$38.95

| | | |
|---|---|---|
| Subtotal | | $38.95 |
| Sales Tax | 8.25 % | $2.25 |
| Employee Discount | | -$11.69 |
| Order total | | $29.51 |

**Total paid**     $ **29** 51

December 07, 2025 12:56 pm
Payment ID: T2RCRMSFJ45KG
Order ID: 7XRCBYWB1930E
Order Employee: Kaylen

Payment

VISA    US DEBIT 9682              $29.51
        Order amount              $29.51
        Cashier: Kaylen

Show Details

View the Privacy Policies for
Clover





BURNERS VAPE SMOKE

4269 HWY 146 STE A
BACLIFF, TX 77518
+1 832-905-6174

| Just CBD Ultra Relief Gel 1000mg CBD + 100mg THC With Menthol | | $41.95 |
|---|---|---|
| Employee Discount | | -$12.59 |

| Subtotal | | $29.36 |
|---|---|---|
| Sales Tax | 8.25 % | $2.42 |
| Order total | | $31.78 |

## Total paid

## $ 31 78

January 05, 2026 5:08 pm
**Payment ID: PT8G2FSCAQHCT**
**Order ID: H4Y1GQCCFWYYY**
Order Employee: Tom

**Payment**

| VISA | US DEBIT 9682 | $31.78 |
|---|---|---|
| | Order amount | $31.78 |
| | Cashier: Tom | |

Show Details

View the Privacy Policies for
Clover



BURNERS VAPE SMOKE

4269 HWY 146 STE A
BACLIFF, TX 77518
+1 832-905-6174

Exodus Giga Bytes 500mg Ea. Assorted

$38.95

| | | |
|---|---|---|
| Subtotal | | $38.95 |
| Sales Tax | 8.25 % | $2.25 |
| Employee Discount | | -$11.69 |
| Order total | | $29.51 |

**Total paid**    $ **29** 51

January 07, 2026 12:36 pm
Payment ID: 80SZW9WE5BRYR
Order ID: NKRBS11NC7ATC
Order Employee: Tom

**Payment**

| VISA | US DEBIT 9682 | $29.51 |
|---|---|---|
| | Order amount | $29.51 |
| | Cashier: Tom | |

Show Details

View the Privacy Policies for
Clover





BURNERS VAPE SMOKE

4269 HWY 146 STE A
BACLIFF, TX 77518
+1 832-905-6174

Extra High THCA Exotic Flower - 3.5 gram @
$10.50/gram                                        $36.75

Exodus Giga Bytes 500mg Ea. Assorted
                                                   $38.95

| Subtotal | | $75.70 |
|---|---|---|
| Sales Tax | 8.25 % | $4.37 |
| Employee Discount | | -$22.71 |
| Order total | | $57.36 |

**Total paid**        $ **57** 36

February 07, 2026 2:01 pm
Payment ID: FCSH808A4XNV6
Order ID: YTW1ZV8SYX5JT
Order Employee: Tom

**Payment**

VISA   US DEBIT 9682              $57.36
       Order amount              $57.36
       Cashier: Tom

Show Details

View the Privacy Policies for
Clover





BURNERS VAPE SMOKE

4269 HWY 146 STE A
BACLIFF, TX 77518
+1 832-905-6174

| | |
|---|---|
| Just CBD Ultra Relief Gel 1000mg CBD + 100mg THC With Menthol | $41.95 |

| | | |
|---|---|---|
| Subtotal | | $41.95 |
| Sales Tax | 8.25 % | $2.42 |
| Employee Discount | | -$12.59 |
| Order total | | $31.78 |

**Total paid**   $ **31** 78

February 16, 2026 4:21 pm
Payment ID: KK4W9DT59C07T
Order ID: 8NPT8G97YN7JR
Order Employee: Tom

**Payment**

| | | |
|---|---|---|
| VISA | US DEBIT 9682 | $31.78 |
| | Order amount | $31.78 |
| | Cashier: Tom | |

Show Details

View the Privacy Policies for
Clover





BURNERS VAPE SMOKE

4269 HWY 146 STE A
BACLIFF, TX 77518
+1 832-905-6174

Modern Herb Company Prerolls Assorted x 3
$20.85

Mellow Fellow Gummies 1000mg Euphoria
Blend                                                         $25.95

Foger Switch Pro Pod Frozen Banana
$17.95

Foger Switch Pro Pod Blue Razz Ice
$17.95

| | | |
|---|---|---|
| Subtotal | | $82.70 |
| Sales Tax | 8.25 % | $4.78 |
| Employee Discount | | -$24.81 |
| Order total | | $62.67 |

**Total paid**        $ **62** 67

March 18, 2026 1:06 pm
Payment ID: E4BYSPD4GJASE
Order ID: KQKZNQ7NDFPJG
Order Employee: Tom

Payment

VISA    US DEBIT 9682          $62.67
        Order amount          $62.67
        Cashier: Tom

Show Details

View the Privacy Policies for
Clover





BURNERS VAPE SMOKE

4269 HWY 146 STE A
BACLIFF, TX 77518
+1 832-905-6174

Just CBD Ultra Relief Gel 1000mg CBD +
100mg THC With Menthol                $41.95

| | |
|---|---|
| Subtotal | $41.95 |
| Sales Tax    8.25 % | $2.42 |
| Employee Discount | -$12.59 |
| Order total | $31.78 |

**Total paid**          $ **31** 78

March 30, 2026 4:02 pm
Payment ID: 7MEGPE6B86C0J
Order ID: GM3H8NRZPG130
Order Employee: Caleb

**Payment**

**VISA**   US DEBIT 9682           $31.78
Order amount           $31.78
Cashier: Caleb

Show Details

View the Privacy Policies for
Clover





BURNERS VAPE SMOKE

4269 HWY 146 STE A
BACLIFF, TX 77518
+1 832-905-6174

Sumo Gummies 10,000 Mg/jar 25ct

$38.95

Just CBD Ultra Relief Gel 1000mg CBD +
100mg THC With Menthol          $41.95

| | | |
|---|---|---|
| Subtotal | | $80.90 |
| Sales Tax | 8.25 % | $4.67 |
| Employee Discount | | -$24.27 |
| Order total | | $61.30 |

**Total paid**   $ **61** 30

April 27, 2026 3:31 pm
Payment ID: VNBNDCBFB06D0
Order ID: K5ZV96D7JYV1J
Order Employee: Caleb

Payment

| VISA | US DEBIT 9682 | $61.30 |
|---|---|---|
| | Order amount | $61.30 |
| | Cashier: Caleb | |

Show Details

View the Privacy Policies for
Clover





BURNERS VAPE SMOKE

4269 HWY 146 STE A
BACLIFF, TX 77518
+1 832-905-6174

Sumo Gummies 10,000 Mg/jar 25ct

$38.95

| Subtotal | | $38.95 |
|---|---|---|
| Sales Tax | 8.25 % | $2.25 |
| Employee Discount | | -$11.69 |
| Order total | | $29.51 |

**Total paid** $ **29** 51

May 02, 2026 1:25 pm
Payment ID: 3DXAPZBXVED06
Order ID: 6HJQTHWMKCXS8
Order Employee: Tom

**Payment**

| VISA | US DEBIT 9682 | $29.51 |
|---|---|---|
| | Order amount | $29.51 |
| | Cashier: Tom | |

Show Details

View the Privacy Policies for
Clover





BURNERS VAPE SMOKE

4269 HWY 146 STE A
BACLIFF, TX 77518
+1 832-905-6174

Sumo Gummies 10,000 Mg/jar 25ct Assort.
$38.95

| Subtotal | | $38.95 |
|---|---|---|
| Sales Tax | 8.25 % | $2.25 |
| Employee Discount | | -$11.69 |
| Order total | | $29.51 |

**Total paid**    $ **29** 51

June 22, 2026 4:39 pm
Payment ID: R31KY8KGSV00E
Order ID: K96A59T24G902
Order Employee: Tom

**Payment**

| VISA | US DEBIT 9682 | $29.51 |
|---|---|---|
| | Order amount | $29.51 |
| | Cashier: Tom | |

Show Details

View the Privacy Policies for
Clover





BURNERS VAPE SMOKE

4269 HWY 146 STE A
BACLIFF, TX 77518
+1 832-905-6174

Sumo Gummies 10,000 Mg/jar 25ct x 2

$77.90

Employee Discount    -$23.38

| Subtotal | | $54.52 |
| Sales Tax | 8.25 % | $4.50 |
| Order total | | $59.02 |

**Total paid**     $ **59** 02

July 14, 2026 1:56 pm
Payment ID: HC42N7DHBRT2E
Order ID: P66ENY2K664HT
Order Employee: Caleb

**Payment**

| VISA | US DEBIT 9682 | $59.02 |
| | Order amount | $59.02 |
| | Cashier: Caleb | |

Show Details

View the Privacy Policies for
Clover





BURNERS VAPE SMOKE

4269 HWY 146 STE A
BACLIFF, TX 77518
+1 832-905-6174

| Randy's Pipe Cleaners | | $2.95 |
|---|---|---|
| Employee Discount | | -$0.89 |
| Sumo Gummies 10,000 Mg/jar 25ct Wild Watermelon | | $38.95 |
| Employee Discount | | -$11.69 |
| Subtotal | | $29.32 |
| Sales Tax | 8.25 % | $2.42 |
| Order total | | $31.74 |

**Total paid**    $ **31** 74

July 21, 2026 7:21 pm
**Payment ID: PFG9C4JXGWJG4**
**Order ID: X0R9ZE4ADM7K2**
Order Employee: Tom

**Payment**

| VISA | US DEBIT 9682 | $31.74 |
|---|---|---|
| | Order amount | $31.74 |
| | Cashier: Tom | |

Show Details

View the Privacy Policies for
Clover





BURNERS VAPE SMOKE

4269 HWY 146 STE A
BACLIFF, TX 77518
+1 832-905-6174

Sumo Gummies 10,000 Mg/Jar 25ct

|  |  | $38.95 |
| --- | --- | --- |
| Employee Discount |  | -$11.69 |
| Subtotal |  | $27.26 |
| Sales Tax | 8.25 % | $2.25 |
| Order total |  | $29.51 |

**Total paid**    $ **29** 51

July 28, 2026 2:18 pm
Payment ID: VYN4DJDHMNDSR
Order ID: 0WJWFTZ5JW2SE
Order Employee: Tom

Payment

| VISA | US DEBIT 9682 | $29.51 |
| --- | --- | --- |
|  | Order amount | $29.51 |
|  | Cashier: Tom |  |

Show Details

View the Privacy Policies for
Clover



# PLAINTIFF EXHIBIT

# D3-B – D3-D

Batch #: 9111-022826
Exp. Date: 03/05/28
MFG For:
Trip Drip
17744 Sky Park Cir Ste 290
Irvine, CA 92614



**DOUBLE STACKED BITEZ**

**2000MG TOTAL**

COLLABORATION BY:

**OCHO EXTRACTS**



**SUGAR**

## Nutrition Facts

Serving Size: 1 Chew (20g)
Servings Per Container 30

Amount Per Serving

**Calories** 90

| | % Daily Value |
|---|---|
| **Total Fat** 0g | na |
| Saturated Fat 0g | 0% |
| **Sodium** 7.5mg | 16% |
| **Total Carbohydrate** 12g | 9% |
| Sugars 6g | 12% |
| Includes 6g Added Sugars | 12% |
| Protein 0g | 1% |

**1000MG:**
Delta 8, Delta 9, THCP

| | |
|---|---|
| Vitamin C | 1% |
| Calcium 3g | 0% |
| Potassium 1.5mg | <1% |
| | 0% |

Percent Daily Values are based
Your Daily Values may be higher or lower depending on
on your daily needs.

INTS: CORN SYRUP, SUGAR, WATER, GELATIN, CITRIC
ACID, NATURAL FLAVORS, PECTIN, VEGETABLE OIL & CARNAUBA
LEAF WAX, FOOD COLORING, HEMP OIL EXTRACT.

KEEP OUT OF REACH OF CHILDREN.
Effects of Cannabinoid products may be delayed up to two
hours. Cannabinoids use while pregnant or breastfeeding may
be harmful. Consumption of Cannabinoids impairs your ability
to operate machinery. Please use extreme caution.
THIS PRODUCT CONTAINS A TOTAL DELTA-9
TETRAHYDROCANNABINOL CONCENTRATION THAT DOES NOT
EXCEED 0.3% ON A DRY-WEIGHT BASIS

May not be sold to any person under the age of 21
This statement has not been evaluated by the food and drug
administration. This products is not intended to diagnose, treat,
cure, or prevent any disease.

⚠ PROP 65 WARNING
This product may contain chemicals known to the State of
California to cause birth defects and other reproductive harm.
For more information, go to www.P65warnings.ca.gov





@trippysugar
WWW.TRIPPYSUGAR.COM

@OCHOEXTRACTSOFFICIAL
OCHOEXTRACTS.COM

@TRIP-DRIP-OFFICIAL
WWW.TRIP-DRIP.COM

MANUFACTURED BY NTRL
11206 FISHER AVE STE. A TAMPA, FL 33619
WWW.NTRL.CO



7 40111 14138 3





PLAINTIFF EXHIBIT

D3-E – D3-F

ARE OMITTED

# PLAINTIFF EXHIBIT

# D3-G – D3-I







# PLAINTIFF EXHIBIT

# D3-J – D3-K





# PLAINTIFF EXHIBIT

# D3-L

**All:**

Please be advised that the State of Texas, i.e. Dan Patrick, is attacking our products again. We are already down in revenue at this time as the new rules by DSHS have cut a large section of our product offerings. Our customers are now either ordering online or shopping where they choose not to follow the rules. DSHS has now decided, against their own rules/laws, to schedule THC's that are made legal by LAW. Please see below how this will affect us all.

**What you should know**: Ellen and I have reduced our personal salaries to reduce weekly expenses. This will affect all hourly employees by reducing your hours moving forward. We are not certain of the exact number of hours we will need to cut so you will need to be flexible for the next couple of months while we see how viable our business will be moving forward. Salaried employees will see an increase in hours, and Ellen and I will be picking up shifts at both locations. We will do our best to inform you all as soon as we have any indications on how our industry is changing.

**What you should be informing our customers:** As of July 31$^{st,}$ all converted cannabinoids, i.e. Delta 8, Delta 10, THC-V, HHC, THC-O, THC-P etc., are schedule 1 drugs. This means they can catch a felony charge for possession of these substances. We will not restock any of these products throughout July as we DO NOT want to set them up for failure. DSHS has taken a legal substance and made it a felony without informing the public. This is both incredibly disgusting and unethical. We will need to inform our customers, so they do not fall into this trap.

I am not sure if we will be able to survive this. Dan Patrick has put the right judges in the correct spots to defeat us. He is not playing by the rules nor is he behaving as a conservative. Unless we get intervention from the federal government our best bet is to attempt to prevent him from being re-elected. We will stay on top of the changing legal landscape and keep you all informed!

Thanks!

Kenneth and Ellen Berner

# PLAINTIFF EXHIBIT

# D3-M

# Thomas Scott Monti

**DOB 03/31/1970**

**4802 Belwick Place Lane**

**League City, Texas 77573**

**<u>QUALIFICATIONS PROFILE</u>**

Proactive, high-energy individual with over 25+ years' experience in law enforcement principles and practices, as well as state and federal laws relating to correctional and law enforcement agencies. Adept at building trust and developing effective relationships with other agencies and officials. Excellent organizational, time management, and leadership skills, coupled with the ability to build and manage creative teams. Ability to think clearly and objectively, rapidly assessing the problem at hand while remaining calm in difficult situations.

ILCS/IVC

Emergency Operations

Public Speaking

Community Awareness

Technical Projects

Educating & Mentoring

Hostage Negotiations

Critical Incident Operations

Multi-Agency Coordination

**<u>KEY ACHIEVEMENTS</u>**

Promoted to Sergeant 1/1/2019 assigned as Illinois State Police Academy Officer Survival Coordinator, Statewide Physical fitness training coordinator. CrossFit Level 1 Coach, EMT-B certification.

Assigned as CSWAT Alpha Squad Leader, assisted with writing of the Standard Operating Procedures (SOPs) for the SWAT unit, ensuring awareness by all parties (SWAT, investigations and uniformed patrol) of procedures for SWAT callout, arrival, deployment at scene, use of tactically trained medics, and handling of all victims and witnesses.

Instrumental in leading and planning multiple years of successful SWAT missions, ensuring the safety of all hostages, civilians, and team members.

- Alpha Squad Leader/Sometimes Acting Team Leader
- Operational Element Leader on numerous occasions
- Instructor for ISP Academy and SWAT/EPU personnel
- Conduct site surveys on majority of CSWAT Operations
- Use of force applications on Operations
- Lead instructor for new operator's school CQB/CQCT/Dig Pro etc.
- Range officer for SWAT/EPU and ISP personnel
- CAT instructor for SWAT/EPU and ISP personnel
- First Responder/EMR instructor for SWAT/EPU and ISP personnel
- Lead instructor for ISP Academy and SWAT/EPU personnel
- Assigned as TEMS officer on numerous operations
- Attend ISP and SWAT/EPU training as required
- Understand all mission and task on operational basis
- Understand all mission and task on training basis
- Attend outside training, Leadership (Roach/McKnight/Abbott/Mumbai)

**PROFESSIONAL EXPERIENCE**

Illinois Department of Corrections (SORT), 1995-1997

Illinois State Police, 1997 - 2020

Patrol District 11, 1997 - 1998

Crime Scene Investigator, 1998-2000

Patrol District 11, 2000-2001

Special Weapons and Tactics/SWAT, 2001-2017

Executive Protection Unit/EPU, 2017-2019

Illinois State Police Academy Officer Survival Coordinator 2019-2020

Illinois State Police Academy Curriculum Review Board 2019-2020

Illinois State Police Use of Force Committee Chair 2019-2020

**Retirement from Active Duty 08/31/2020**

Retired in good standing from the Illinois State Police with the ability to carry sidearm.

**Currently working**:

Contractual law enforcement instruction for Beliveau Professional Services Smithton, Illinois

- Instructor in Undercover Narcotics tactics and investigative procedures
- Instructor in SWAT tactics and procedures
- Instructor in combative and control and arrest tactics

Assistant Personal Training Director, LA Fitness League City, Texas.

Personal Training Director, LA Fitness League City, Texas.

- Management and scheduling of personal trainers
- Invoice sale of personal training contracts and memberships
- Customer service

**ISP Academy, 2019-2020**

**Promoted to Sergeant 01/01/2019**

The Officer Survival Training Coordinator reports to the Basic Training Section Supervisor.  The Basic Training Section Supervisor reports to the Training Bureau Chief, who reports to the Academy Deputy Commander.  Reporting to this position is the PFIT Coordinator, Practical Exercise Specialist, and EMS Coordinator.

Coordination of the activities of the PFIT statewide fitness Coordinator (CrossFit Level 1 Coach), Practical Exercise Specialist, and EMS Coordinator as well as temporarily assigned field instructors.  The Officer Survival Training Coordinator is involved in the planning, review and development of Officer Survival training and curricula for the Department.  The incumbent coordinates and delivers instruction in the areas of Rapid Deployment/Active Shooter/Threat and Officer Survival subjects, such as patrol procedures, vehicle stops, and crimes in progress.  The incumbent assists with Control and Arrest Tactics (CAT) training and the Conducted Electrical Weapons program as needed.  The incumbent serves as liaison between the Department and the Illinois Law Enforcement Training and Standards Board concerning officer survival issues for local law enforcement officers.  The incumbent is responsible for providing a means of evaluating products and techniques utilized in the section's programs and ensuring that supplies and safety equipment are available, in satisfactory condition, and utilized in a safe manner. The incumbent works closely with the Statewide Control and Arrest Tactics Coordinator to identify current trends in law enforcement and ensure our training is current and relevant.

The incumbent participates in selection and ensures delivery of necessary training to persons who serve as Officer Survival instructors in the field, including PFIT monitors, Rapid Deployment Instructors, and First Responder Instructors.  The incumbent oversees physical fitness testing for Illinois State Police

applicants in accordance with ISP Merit Board standards.  The incumbent is required to cross train in disciplines within the Officer Survival Training Unit.

The incumbent must maintain an up-to-date knowledge of federal and state statutes and court cases relating to police work, must comply with Department rules and regulations, and must take appropriate action to contain and remedy situations as required. The incumbent will serve as an officer survival and use of force expert on behalf of the Department in legal proceedings.

**Executive Protection Unit, 2017-2019**

 Lead Instructor for Mansion detail and assist Travel detail with lead instruction on training days voluntarily and when requested by Supervisors

Regularly interacted with investigations and outside agencies

Completed Basic Trauma Life Support Training with Dr. Walter Bradly/Dr. Andrew Dennis to fulfill continuing education hours toward my EMT B license and Expanded Scope certification for TEMS

Consult with EPU and Governors Staff and employees to Execute Safe, Efficient, and Enjoyable events

I recognize coworker's strengths and weaknesses and offer training and guidance to improve their skills in the following areas of instruction:

- Outlaw biker and Street Gang identification
- Range (Pistol, Rifle, Shotgun)
- First Responder/EMR/Advanced Trauma Care/Narcan and Epi Pen
- CAT
- Physical Fitness
- SWAT, Rapid Deployment, DIG PRO tactics
- Use of Force Report Writing

**Tactical Operations (TRT and SWAT), 2001 – 2017**

Reporting directly to SOCOM Command, execute all decisions on vendors used; develop specifications for vendors and recommendations for purchases as assigned.

Selected to research, develop, and write a successful purchase request for equipment.

Selected to research, develop, write and instruct training outlines and standard operating procedures for new operator's school, weapons of mass destruction teams and existing SWAT operators.

Successfully completed all medical, tactical and specialized training requirements for SWAT Operator.

Planned and executed operations and specialized training with other agencies for SWAT team; involved specialized training from the military in dignitary protection, hostage negotiations, drug raids, and the use of helicopters in SWAT missions, raid planning, and bomb recognition.

Independently gained authorization from Command staff to purchase the "threat level 3 vests and helmets" and other costly essential equipment for the SWAT team.

Collaborated with federal agencies, Metropolitan Enforcement Groups (MEG)/narcotics units, task force and outside agencies in planning and completing all SWAT Alpha squad missions.

(*Assigned undercover detail for DEA 07/11 and 10/11*)

**Crime Scene Investigator, 1998 – 2000**

Forensic investigation of all types of cases in the Metro east area:  to include major case squad cases, homicides, arson, person and property crimes.

Attended and completed all extensive classes and training required to become certified as a crime scene investigator

**Patrol District 11, 1997 – 1998**

Worked as area patrol in D-11 (Collinsville, Il), high activity to include high criminal activity writer.

**EDUCATION**

Rend Lake College, 1988-1990

 Science

Southern Illinois University, 1990-1993

Biology/Chemistry

**CERTIFICATIONS**

EMT-B, 2002-Present

Illinois law enforcement training and standards board Instructor- all SWAT activities, range, cat, use of force report writing, street gangs, outlaw motorcycle gangs, first responder and TEMS

Illinois State Police instructor- range, cat, rapid deployment, use of force report writing, street gangs, outlaw motorcycle gangs and first responder

SWAT/ EPU instructor-range, dignitary protection, CCQT, CQB, TEMS, cat, explosive breaching, use of force report writing, street gangs, outlaw motorcycle gangs and first responder

**PROFESSIONAL AFFILIATIONS**

<u>Member, Illinois Drug Enforcement Officers Association</u>

Member, Illinois Tactical Officers Association

Member, Tactical Medical Officers Association

Member, International Outlaw Motorcycle Gang Investigators Association

Member, United States Powerlifting Association

**COMMUNITY ACTIVITIES**

Active in Sherman/Williamsville school activities

Active in shelter dog rehab and rehoming with Sangamon County Animal Control, Illinois Humane Society

Active member Illinois Big Brother/Big Sister

**HOBBIES**

Powerlifting/Fitness/Motorcycle riding

# PLAINTIFF EXHIBIT

# D3-N



# ILLINOIS STATE POLICE

## THOMAS S. MONTI

## SERGEANT

### 4871

## RETIRED

### 8/31/2020

Retired in good standing from service as a law enforcement officer the Illinois State Police and has met all provisions of 18 USC order of the Director of the Illinois State Police.

# PLAINTIFF EXHIBIT

# D3-O



# Certificate of Recognition

Awarded to

## Sergeant Thomas S. Monti

**In Recognition of
23 Years
of Outstanding Contribution and
Faithful Service.**

In witness whereof, I have affixed my signature this
Thirty-first day of August 2020.



Director

# PLAINTIFF EXHIBIT

# D3-P



## ILLINOIS STATE POLICE
### SPRINGFIELD
### 62703-2487
### 217-782-7264

**BRENDAN F. KELLY**
DIRECTOR

August 31, 2020

Sergeant Thomas Monti
410 Turtle Dove Drive
Sherman, Illinois 62684

Dear Sergeant Monti:

Congratulations on your retirement effective August 31, 2020, from the Illinois State Police (ISP). I commend you for providing more than 23 years of dedicated service to the Department and the citizens of Illinois.

You began your career on May 1, 1997, with Cadet Class 95. Upon graduation, you were assigned as a Trooper to District 11 Patrol. In December 1998, you transferred to the Division of Forensics as a Crime Scene Investigator. In October 2000, you transferred back to District 11 Patrol. You admirably served the communities of District 11 by upholding the ISP values of Integrity, Service, and Pride. You spent most of your career serving as a Tactical Operator with the Special Weapons and Tactics (SWAT) Team from July 2001 to October 2017, where you planned and executed numerous high-risk tactical operations and were an integral part in the development and implementation of the ISP SWAT Tactical Emergency Medical Services program. In October 2017, you transferred to the Executive Protection Unit where you served under the Governor Bruce Rauner Administration. In January 2019, you were promoted to the rank of Sergeant as the Officer Survival Training Coordinator at the Academy. During your tenure at the Academy, you provided invaluable training to Cadets, Recruits, and In-Service personnel.

The ISP has a long and proud tradition carried on through the professionalism of its employees. Your dedicated service has contributed greatly to that tradition. On behalf of the men and women of the ISP and the state of Illinois, I offer my congratulations on a job well done and the completion of a distinguished career. Thank you for your commitment and dedication to the ISP. Please accept my best wishes for a happy and well-deserved retirement.

Respectfully,

Brendan F. Kelly
Director